# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION No. 1:15-cv-00559

THE CITY OF GREENSBORO, LEWIS A.
BRANDON III, JOYCE JOHNSON,
NELSON JOHNSON, RICHARD ALAN
KORITZ, SANDRA SELF KORITZ,
CHARLI MAE SYKES, MAURICE
WARREN II, AND GEORGEANNA
BUTLER WOMACK,

               Plaintiffs,

    v.

THE GUILFORD COUNTY BOARD OF
ELECTIONS,

               Defendant.

**SECOND
AMENDED COMPLAINT**

---

Plaintiff the City of Greensboro ("City of Greensboro" or "City") and Lewis A.

Brandon III, Joyce Johnson, Reverend Nelson Johnson, Richard Alan Koritz, Sandra Self

Koritz, Charli Mae Sykes, Maurice Warren II, and Georgeanna Butler Womack

(collectively "Citizen Plaintiffs"), complaining of Defendant the Guilford County Board

of Elections, allege and state the following:

## OVERVIEW

1.      Unlike every other city, town, and village in North Carolina, the City of

Greensboro and its citizens no longer control the structure of their municipal government.

On July 2, 2015, the General Assembly passed a local act (hereinafter, "the Greensboro

Act" or "the Act") implementing a scheme that destroys the rights of the City of

Greensboro and its citizens to govern themselves locally, while simultaneously redrawing the lines of city council districts to overpopulate certain districts while underpopulating others without a legitimate government purpose. The redistricting plan also splits precincts and pits incumbent council members against each other. District 2 was drawn predominantly on the basis of race, without being narrowly tailored to achieve a compelling governmental interest. *See* Session Law 2015-138, attached hereto as **EXHIBIT A**. Compounding the harm, the Greensboro Act made these unprecedented changes on the eve of the filing period for upcoming municipal elections, increasing the risk that both candidates and voters will be confused and deterred from the polls. Moreover, the hastily-passed Greensboro Act denies the rights of Citizen Plaintiffs to petition and initiate a referendum to amend the Charter of the City of Greensboro to change their form of government—a right enjoyed by the citizens of every other North Carolina municipality. Plaintiffs therefore jointly bring this action for declaratory and injunctive relief to declare the status of the City of Greensboro and its citizens under the Act and restore the constitutional rights of the citizens of City of Greensboro, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

## PARTIES

2.    Plaintiff the **City of Greensboro** is a municipal corporation organized and existing under the laws of North Carolina and located in Guilford County, North

Carolina. The City of Greensboro is a body politic and corporate with capacity to sue as provided in N.C. Gen. Stat. § 160A-11.

3. Citizen Plaintiffs **Lewis A. Brandon III, Joyce Johnson, Reverend Nelson Johnson, Richard Alan Koritz**, **Sandra Self Koritz**, **Charli Mae Sykes, Maurice Warren II,** and **Georgeanna Butler Womack** are each citizens, residents, and registered voters in the City of Greensboro, North Carolina. Plaintiffs have standing to bring this action because they are personally aggrieved in that the loss of their right to control the structure of their municipal government is a denial of the equal protection of the law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

4. Under the new redistricting plan, Plaintiff **Lewis A. Brandon III** resides in City Council District 1, and as a result of overpopulation in District 1, his vote will be devalued should the enacted plan take effect. Mr. Brandon regularly votes and participates in the political process. He desires that his vote be valued equally to the votes of residents of other Greensboro City Council districts.

5. Under the new redistricting plan, Plaintiff **Richard Alan Koritz** resides in City Council District 4, and as a result of overpopulation in District 4, his vote will be devalued should the enacted plan take effect. Mr. Koritz regularly votes and participates in the political process. He desires that his vote be valued equally to the votes of residents of other Greensboro City Council districts.

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 3 of 43

6.      Under the new redistricting plan, husband and wife Plaintiffs **Richard Alan Koritz** and **Sandra Self Koritz** reside in City Council District 4, and as a result of overpopulation in District 4, their votes will be devalued should the enacted plan take effect.  Both Mr. and Mrs. Koritz regularly vote and participate in the political process and desire that their votes be valued equally to the votes of residents of other Greensboro City Council districts.

7.      Under the new redistricting plan, Plaintiff **Charli Mae Sykes** resides in City Council District 6, and as a result of overpopulation in District 6, her vote will be devalued should the enacted plan take effect.  Ms. Sykes regularly votes and participates in the political process.  She desires that her vote be valued equally to the votes of residents of other Greensboro City Council districts.

8.      Under the new redistricting plan, Plaintiff **Georgeanna Butler Womack** resides in City Council District 2. Ms. Womack regularly votes and participates in the political process.  She desires to be assigned to a district not on the basis of her skin color, but in a racially-neutral way that respects traditional redistricting criteria.

9.      Defendant **Guilford County Board of Elections** is a legal entity created by state statute and empowered by state law with the responsibility of administering elections for the City of Greensboro.

- 4 -

## JURISDICTION AND VENUE

10.     This action arises, in part, under the Fourteenth Amendment to the United States Constitution and the Declaratory Judgment Act.

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1357, and 1367.

12.     This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b).

14.     Defendant does not possess immunity under the Eleventh Amendment of the United States Constitution because of its direct role in enforcing the unconstitutional Greensboro Act in election proceedings.

## STANDING

15.     The City of Greensboro has standing on its own behalf and on behalf of its citizens to seek relief for the unconstitutional destruction of the rights to petition the City to change their form of government.

16.     Citizen Plaintiffs have standing to bring this action because they are personally aggrieved by the Act in at least one of the following ways:

    a.  Their votes will be unfairly diluted because their districts are more populous than those of other Greensboro voters.

    b.  They reside in communities of interest that have been divided among multiple districts under the new redistricting plan.

- 5 -

c. They reside in a district in which race unjustifiably predominated in the drawing of the district lines.

d. Their right to petition for change in the structure of the government of the City of Greensboro has been destroyed.

17.  This action is timely in that it was filed 11 days ago after House Bill 263 became law on July 2, 2015, and the newly-established filing period for candidates seeking election to the Greensboro City Council—which opens at 12 noon on July 27, 2015 and closes at 12 noon on August 7, 2015—had not yet started.  The timing of this action therefore provides this Court the opportunity to remedy the equal protection violations created by the Greensboro Act prior to significant and potentially detrimental reliance on that scheme by Defendant and potential candidates for City Council.

## THE LEGISLATIVE HISTORY OF THE GREENSBORO ACT

18.  The Greensboro Act is the ratified version of House Bill 263, short titled "City Elections / Trinity and Greensboro," which alters the structures and methods of election of both the Greensboro City Council and the Trinity City Council.    The provisions regarding the City of Greensboro originated in Senate Bill 36, which is still an active bill.

### *The majority of Greensboro residents allowed to speak to the General Assembly opposed Senate Bill 36.*

19.  Senate Bill 36, short titled "Greensboro City Council Changes," was filed February 4, 2015, by state Senator Trudy Wade, a Republican from Guilford County whose district includes 38,298, or 20.5%, of Greensboro's 186,120 registered voters.

- 6 -

20.    Senate Bill 36 was referred to the Senate Redistricting Committee on February 9, 2015, and was heard in committee for the first time at 1:00 p.m. Thursday, March 5, 2015, less than twenty-four hours after it was added to the committee agenda at 2:24 p.m. Wednesday, March 4, 2015.

21.    Senate Bill 36 received a second hearing in the Senate Redistricting Committee at 3:00 p.m. on March 10, 2015, at which six (6) times as many Greensboro residents spoke in opposition to the bill as spoke in its favor.  Senate Bill 36 received a favorable report as a committee substitute from the Senate Redistricting Committee the same day.

22.    On March 11, 2015, after an amendment by Senator Gladys Robinson of Guilford County to add, as a condition precedent to the proposed changes in Greensboro's form of government, that the citizens must approve those changes in a referendum, was tabled, Senate Bill 36 passed its second reading in the Senate 29-16 along party lines, and on March 12, 2015, the bill passed its third reading in the Senate 33-15.

23.    Senate Bill 36 was sent to the House on March 12, 2015.  On March 17, 2015, the bill passed its first reading and was referred to the House Elections Committee, where the bill was added to and removed from the committee agenda several times but had not yet received a hearing at the time of filing this Complaint.  Senate Bill 36 remains an active bill.

***House Bill 263 focused on the City of Trinity until late in the legislative process.***

- 7 -

24.     House Bill 263 was filed by Representative Pat Hurley of Randolph County on March 17, 2015, with the short title "City of Trinity Terms of Election."  House Bill 263 was reported favorably by the House Local Government Committee on March 26, 2015, passed its second and third readings in the House on March 30, 2015, passed its first reading in the Senate on March 31, 2015, and was referred to the Senate Redistricting Committee on May 6, 2015.  Throughout that time, House Bill 263 contained <u>only</u> provisions related to the Trinity City Council.   To be clear, House Bill 263 contained <u>no</u> provisions related to the Greensboro City Council.

25.     The contents of Senate Bill 36 were added to House Bill 263 as a committee substitute in the Senate Redistricting Committee at 11:30 a.m. Wednesday, June 10, 2015.  The meeting had been announced less than twenty-four hours earlier, at 11:46 a.m. Tuesday, June 9, 2015.  The short title of the committee substitute bill was "City Elections / Trinity and Greensboro."  The committee meeting agenda listed House Bill 263 under the short title "City of Trinity Terms of Election."  *See* **EXHIBIT B** hereto.

26.     During the June 10 meeting of the Senate Redistricting Committee, Senator Trudy Wade of Guilford County explained the Greensboro provisions of House Bill 263 and stated that she was the author of the Greensboro provisions of the bill.  No public comment was permitted during the meeting, and only one member of the Senate, Senator Gladys Robinson of Guilford County, was permitted to speak in opposition to the bill. The entire process of introducing, explaining, debating, and voting to favorably report the

- 8 -

committee substitute to House Bill 263 lasted less than fifteen minutes. When the meeting ended, the North Carolina General Assembly's website continued to list the most recent version of House Bill 263 under the short title "City of Trinity Terms of Election," and the publicly-available bill text reflected no provisions related to Greensboro.

27.     On June 11, 2015, after an amendment by Senator Gladys Robinson of Guilford County to divide the bill was tabled, House Bill 263 passed its second and third readings in the Senate 31-16 along party lines.

28.     House Bill 263 was sent to the House on June 16, 2015. The bill was added to and removed from the House calendar several times, and on June 29, 2015, Representative Pat Hurley of Randolph County's motion to concur in the Senate's changes to the bill was defeated 35-73, with bipartisan opposition.

29.     A conference committee was formed to resolve the House and Senate's differences on House Bill 263.

30.     On the afternoon of July 1, 2015, less than two days after the House refused to concur in House Bill 263, the conference committee for House Bill 263 returned a report signed by all committee members except Representative John Blust of Guilford County, the only committee member who had previously voted against the bill. The conference committee substitute bill differed from the previous version of House Bill 263 in three respects: (1) in Section 2(c), it created eight single-member districts for the Greensboro City Council rather than the seven single-member districts that had been proposed in Senate Bill 36. As would be expected, this change in the number of districts

- 9 -

drastically changed the boundaries of the districts contemplated in Senate Bill 36; (2) in Section 2(d), which altered the mayor's voting authority, it changed the council votes necessary to make certain changes to the budget; and (3) in Section 2(b), it permanently prohibited the City of Greensboro from changing its own election districts or form of government, instead reserving that power to the General Assembly and permitting the City only to "submit proposed changes" to the legislature.

31.     At 11:00 a.m. on July 2, 2015, the House considered the conference report on House Bill 263 and voted 53-50 not to adopt it.  A motion by Representative Rick Glazier of Cumberland County to table the bill was not accepted by House Speaker Tim Moore of Cleveland County, and the House recessed until 12:30 p.m. so that House Republicans could caucus on House Bill 263.  Shortly thereafter, the Senate also called a recess until 12:30 p.m.

32.     When the House returned from recess on July 2, Representative Charles Jeter of Mecklenburg County moved to reconsider House Bill 263.  In lieu of debate on the motion, House Rules Committee Chairman David Lewis of Harnett County successfully moved the previous question, and the motion to reconsider was approved 59-46.  Representative Lewis then immediately moved to adopt the conference report, followed by an immediate successful motion for the previous question, and the conference report was adopted 57-46 with no opportunity for debate.  During these proceedings, House Minority Leader Larry Hall of Durham County attempted to speak in

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 10 of 43

opposition to adopting the conference report but was told that debate was not in order because House Bill 263 was no longer on its second or third reading.

33.    When the Senate returned from recess after 12:30 p.m. on July 2, it voted 33-16 along party lines to adopt the conference report to House Bill 263.

34.    House Bill 263 was ratified July 2, 2015, and was chaptered as Session Law 2015-138 July 2, 2015, one day after its revised contents were first made public.

## THE GREENSBORO ACT IS UNCONSTITUTIONAL

**I.     The General Statutes grant all citizens and municipalities throughout North Carolina the right to structure their local governments.**

35.    The provisions of Part 4 of Article 5 of Chapter 160A of the North Carolina General Statutes grant every North Carolina city, town, and village—as well as the citizens therein—the right to control the structure of their municipal government.

36.    Each North Carolina municipality and its citizens have the right to change the "form of government by adopting any one or combination of the options" set forth in Section 160A-101.  These options include the style of the governing board, the terms of council members, the number of council members, the mode of electing council members, the mode of selecting the mayor, the role of the mayor, and whether the government shall be mayor-council or council-manager.  N.C. Gen. Stat. § 160A-101

37.    A city council can enact ordinances that amend the city's charter to adopt any of the optional forms set forth in Section 160A-101.  A municipality's council may make the passage of such an amendment dependent on the approval of the citizens.   N.C. Gen. Stat. § 160a-102.

- 11 -

38.     If the city council does not make such an amendment contingent on the approval of citizens, the citizens can introduce a referendum petition that compels the city council to submit the council's amendment to a majority vote of the citizens.  N.C. Gen. Stat. § 160A-103.  Upon receipt of a valid referendum petition, the City Council "shall submit an ordinance adopted under G.S. 160A-102 to a vote of the people."  _Id._ (emphasis added).  In keeping with the statutory directive that "[t]he date of the special election shall be fixed on a date permitted by G.S. 163-287" (_id._), the City Council passes a resolution to hold a special election and informs the county board of elections of the need for the special election.  Under N.C. Gen. Stat. § 163-287, the county board of elections then publishes adequate notice of the special election and conducts the elections as described in the resolution.  Thus, the General Assembly has granted all North Carolina municipal citizens the right, exercised through a referendum, to veto any change to the structure of their municipal government.

39.     The North Carolina General Statutes further provide for the citizens themselves to introduce an initiative petition to change their municipal form of government.  N.C. Gen. Stat. § 160A-104 states that "[t]he people may initiate a referendum on proposed charter amendments" to adopt any of the optional forms of government set forth in Section 160A-101.  Upon the receipt of a valid initiative petition, "the council shall call a special election on the question of adopting the charter amendments proposed therein, and shall give public notice thereof in accordance with G.S. 163-287."  N.C. Gen. Stat. § 160A-104 (emphasis added).  Just as with the

- 12 -

referendum provisions of Section 160A-103, upon receipt of a valid initiative petition, the City Council passes a resolution to hold a special election and informs the county board of elections accordingly. The board of elections then publishes adequate notice of the special election and conducts the elections as described in the resolution. *See id.* (providing that "[t]he date of the special election shall be fixed on a date permitted by G.S. 163-287"). Thus, all North Carolina municipal citizens have the right, exercised through an initiative, to change the structure of their municipal government.

40. The combination of Sections 160A-103 and 160A-104 affords each North Carolina municipality and its citizens the right to control the structure of their municipal government through a referendum or an initiative.

41. The City of Greensboro has regularly used the referendum procedure to place questions of self-government before the citizens of Greensboro. For example, on Tuesday, March 17, 2015 the Council adopted an ordinance to hold a referendum on whether to extend council member terms limits from two to four years in length.

II. **The Greensboro Act destroys the right to referendum and initiative and thereby the right to self-government for the City of Greensboro and its citizens.**

42. The Greensboro Act restructures the form of Greensboro's municipal government by making the following changes:

a. Previously, the Greensboro City Council was comprised of three council members elected at-large and five council members elected from single-

- 13 -

member districts; now, none of the council members are elected at large, rather each of the eight council members are elected from single-member districts.

b. The General Assembly handcrafted the eight new single-member districts from which the council members will be elected. The newly-defined districts were drawn to overpopulate minority districts and to pit incumbents, including all four of the African-American incumbents on the City Council, against each other.

c. The Act changes the election format for the City Council, which changes the timing of the election. For the past forty-two (42) years, since 1973, Greensboro has followed a primary and election method set forth in N.C. Gen. Stat. § 163-294, according to which the City Council was elected through an October primary and a November election. Under Section 2.(f) of the Act, which directs that N.C. Gen. Stat. 163-293 "shall apply to elections in the City of Greensboro," in 2015 the Greensboro City Council will be elected in an October general election, with a runoff in November if necessary. The Act makes that change despite historical data demonstrating that voter turnout in October primary elections is approximately <u>half</u> of what it is at November elections.

d. Previously, the Mayor had a vote on all council matters; now the Mayor only has a vote in the case of a four-to-four tie among council members (as well as in certain personnel decisions).

e.　Previously, the Mayor and the council members served two-year terms; now, they each serve four-year terms.

43.　Section 2.(b) of the Act forbids the City of Greensboro from changing its municipal government structure in the future:

> <u>Notwithstanding Part 4 of Article 5 of Chapter 160A of the General Statutes and G.S. 160A-23, the City of Greensboro shall not alter or amend the form of government for the City.</u>  Upon the return of the 2020 federal decennial census the North Carolina General Assembly shall revise the districts set out in this action, if needed.  The City of Greensboro may submit proposed changes to the districts set out in this section to the North Carolina General Assembly.

Session Law 2015-138, § 2(b) (emphasis added).

**III.　The Greensboro Act deprives Citizen Plaintiffs of the equal right to vote by redrawing city council districts with higher than practicable overall deviation for arbitrary and discriminatory reasons.**

44.　The Greensboro Act redraws the boundaries of the eight (8) city council districts.

45.　The Greensboro Act's redrawing of the eight city council districts creates an overall population deviation of 8.25%, as opposed to the previous districts' overall deviation of 3.95%.  Under the new plan, Districts 1, 4, and 6 are overpopulated, and Districts 2, 3, 5, 7, and 8 are underpopulated.  Overpopulated districts 1, 4, and 6 are all majority-minority districts.  The racial composition of the districts and their deviations are as follows:

| District | White VAP | Black VAP[1] | Hispanic VAP | Deviation |
|----------|-----------|-----------|--------------|-----------|

---

[1] "Black VAP" includes mixed-race black residents.

| | | | |
|---|---|---|---|
| 1 | 19.34% | 73.89% | 5.24% | +4.37% |
| 2 | 29.28% | 62.15% | 6.90% | -3.68% |
| 3 | 73.35% | 19.07% | 4.42% | -3.03% |
| 4 | 20.95% | 72.74% | 6.72% | +2.87% |
| 5 | 63.81% | 27.28% | 6.18% | -0.09% |
| 6 | 43.04% | 40.61% | 13.52% | +4.57% |
| 7 | 81.05% | 12.77% | 4.20% | -3.56% |
| 8 | 82.22% | 13.60% | 2.56% | -1.46% |

46.     The reason for the 8.25% overall population deviation in this plan is to disadvantage certain incumbents because of their party affiliation, which is an arbitrary and discriminatory purpose.

47.     The 8.25% overall population deviation was also caused by the desire to maximize the voting strength of Republican voters and minimize the voting strength of Democratic voters, which is an arbitrary and discriminatory purpose.

48.     The overall population deviation in the plan was also caused by a desire to benefit certain individuals who may seek to run for City Council in the future, which is an arbitrary and discriminatory purpose.

49.     The overall population deviation in the plan was also caused by a desire to devalue the votes of minority voters, which is an arbitrary and discriminatory purpose.

50.     Prior to the Greensboro Act, no precincts were split.  According to the new districts created by the Act, seven voting precincts are now split.

51.     The Greensboro City Council is a nonpartisan body.  The city's voters are registered  55.66%  Democrat,  22.84%  Republican,  21.35%  unaffiliated,  and  0.15%

- 16 -

Libertarian. The mayor and seven of the eight council members are registered Democrats, and one council member is a registered Republican.

52. At the time of filing of this lawsuit in July 2015, the Greensboro City Council included four African-American members, roughly in proportion with the racial makeup of the city's residents, 42.34% of whom are African-American or mixed-race African-American. The members of the Greensboro City Council at the time of the enactment of Session Law 2015-138, the districts from which they were elected, and the newly-defined districts where they now reside are as follows:

| Name | Race | Elected in District | New District |
|------|------|---------------------|--------------|
| Sharon Hightower | Black | 1 | 1 |
| Justin Outling | Black | 3 (Appointed) | 1 |
| Jamal Fox | Black | 2 | 2 |
| Yvonne Johnson | Black | At-Large | 2 |
| Nancy Hoffman | White | 4 | 3 |
| Mike Barber | White | At-Large | 3 |
| Tony Wilkins | White | 5 | 5 |
| Marikay Abuzuaiter | White | At-Large | 8 |
| Nancy Vaughan | White | Mayor | Mayor |

As the table shows, the Greensboro Act pairs all four African-American incumbents in a district with another African-American incumbent.

53. The Greensboro Act also pairs six of the eight incumbent members of the Greensboro City Council with another incumbent council member for the November elections. All six of the incumbent council members who are paired in a district are registered Democrats.

- 17 -

54.     Marikay Abuzuaiter, the one registered Democrat who is not paired in a district with another incumbent, lives in District 8, where voters in the 2010 general election voted 59.6% straight-ticket Republican.  Tony Wilkins, the single registered Republican council member, is not paired in a district with another incumbent.  Mr. Wilkins lives in District 5, where voters in the 2010 general election voted 47.03% straight-ticket Republican.

55.     Quite simply, the Greensboro Act destroys self-government by the City of Greensboro and its citizens.  The redrawing of districts to disempower voters in overpopulated districts and pit incumbents against each other is inextricably intertwined with the destruction of the statutory authority of the City and its citizens to correct those changes.

56.     If permitted to take effect, the Greensboro Act would destroy the municipal government crafted and controlled by the citizens of Greensboro and replace it with a city council founded upon unconstitutional voting districts and expressly limited in its powers of self-government.

57.     The redistricting plan and the process that yielded these results was tainted with bad faith, arbitrariness, and discrimination, as shown by the following facts:

a.  The only overpopulated districts in the new plan are those with a majority-minority population.

b.  The Act pairs the four current African-American members of the City Council in districts with another African-American incumbent.

c.  The Act's eight-district plan was adopted within 48 hours of the defeat of the seven-district plan originally set out in Senate Bill 36. Clearly there was no opportunity for thoughtful consideration of the makeup or propriety of the new district map.

d.  The Act divides seven precincts within the City, although not a single precinct was split prior to the Act, a fact that evidences disregard for the communities of interest and commonalities among voters who make up the City.

e.  The Act removes from the City of Greensboro and its citizens—alone among all of the municipalities in North Carolina—the ability to alter their form of municipal government, including the number of districts within the City, and reserves to the General Assembly the authority to draw districts in the future.

f.  The Act was so hurriedly enacted that it fails to acknowledge the potential conflict between its Section 2.(b), which prohibits the City of Greensboro from altering its form of municipal government, and Sections 160A-103 and 104, which command that the City "shall" take action in response to valid petitions for initiative and referendum.

g.  The Act was passed on the eve of the filing period for upcoming municipal elections, giving candidates and voters alike virtually no time to learn about and consider the newly-drawn districts.

h. The Act moves the date of the key City Council election from November to October—when voter turnout has historically been <u>half</u> of what it is at November elections.

58. When viewed as a whole, the Act, its various parts, and the procedure pursuant to which it was enacted reveal that the plan and process it implements were tainted with arbitrariness and discrimination.

59. It is readily apparent that the plan and process initiated by the Greensboro Act were designed to serve a single individual's predilections and preferences as opposed to the interest of the community as a whole, and its commonalities and communities of interest. That arbitrariness pervades the Act and, combined with the discriminatory effect of the redistricting plan, renders it unconstitutional.

IV. **District 2 in the Greensboro Act is an unconstitutional racial gerrymander**

60. District 2 in the Greensboro Act plan is 62.15% black in voting age population.

61. District 2 does not follow traditional redistricting principles of compactness, contiguity, respecting subdivision boundaries or communities of interest.

62. The race of the voters to be included in the district was the most important consideration in drawing the district lines for District 2 in the Greensboro Act plan.

63. No African-American member of the General Assembly voted in support of Session Law 2015-138.

64.     African-Americans repeatedly have been elected at-large to the Greensboro City Council in numerous elections of many election cycles.

65.     District 2 in the Greensboro Act plan is not geographically compact.

66.     Black voters are unnecessarily packed into District 2, based on the color of their skin.

67.     White bloc voting in the area of District 2 is not sufficient usually to defeat the candidate of choice of African-American voters in that area.

68.     Prior to the passage of Session Law 2015-138, the General Assembly did not assess whether racially polarized voting in Guilford County is legally significant in that it operates usually to defeat the candidate of choice of black voters.

**V.     If allowed to take effect, the Greensboro Act will cause irreparable harm to Greensboro residents and candidates alike.**

69.     The Greensboro Act effectively implements a scheme to eliminate the existing structure of Greensboro's municipal government and, in an unworkably short time, replace it with a new scheme crafted by the General Assembly, which includes changes to the number and geographic definition of single-member City Council districts.

70.      The Act made these unprecedented changes just weeks before the July 27, 2015 opening of the filing period for candidates seeking election to the Greensboro City Council.  That impracticably short time frame for these changes will cause irreparable harm to Greensboro citizens and candidates alike.

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 21 of 43

71.     Both incumbents and new candidates for City Council would have been required in just two weeks to identify, analyze, and assess their voting constituencies in order to determine whether they should file for office beginning July 27, 2015.

72.     Voters will be required to determine, among other things, which (potentially new) district they are assigned to and which candidates are seeking office in that district.

73.     If the Act goes into effect, it would have dramatically altered the timetable for 2015 Greensboro City Council elections, which will be conducted via an October general election, with a runoff in November if necessary.  Historical data establish that voter turnout for October elections is roughly half that for November elections.

74.     Without immediate injunctive relief, the Act's unconstitutional scheme would have taken effect as candidates file for office and voters begin to consider candidates in the new, disproportionately drawn voting districts and the preparations begin for an October 2015 general election.

75.     Elections under the enacted system would have yielded, and will yield if allowed to proceed, candidates elected in districts that violate the principles of "one person, one vote" and are racial gerrymanders, and, therefore, the guarantee of equal protection set forth in the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution.  That harm will continue, unabated, for the duration of the council members' four-year terms.

## FIRST CAUSE OF ACTION
### Violation of Equal Protection
### 42 U.S.C. § 1983; N.C. Const. Art. I, § 19
*(On behalf of the City of Greensboro and the Citizen Plaintiffs)*

76.     The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

77.     North Carolina General Statutes Sections 160A-103 and 160A-104 grant citizens the right to institute a referendum or an initiative to change the structure of their municipal government.  Collectively, these sections grant the right to control the structure of municipal government to every citizen living in a North Carolina municipality.

78.     The Greensboro Act decrees that the City of Greensboro "shall not alter or amend the form of government for the City," including acting in response to a citizen petition for initiative or referendum.

79.     The Greensboro Act, by extinguishing the right to institute a referendum and an initiative pursuant to Sections 160A-103 and 160A-104, terminates the rights of only Greensboro citizens to control the structure of their municipal government.

80.     Because the right to determine and alter the structure of their municipal government is made available by statute to all other North Carolina municipalities and their citizens, the withdrawal of that right from the City of Greensboro alone violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

81.     Article XIV, Section 3 of the North Carolina Constitution illustrates how equal protection should prevent the Greensboro Act from taking effect, stating in

- 23 -

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 23 of 43

## FIRST CAUSE OF ACTION
### Violation of Equal Protection
### 42 U.S.C. § 1983; N.C. Const. Art. I, § 19
*(On behalf of the City of Greensboro and the Citizen Plaintiffs)*

76.     The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

77.     North Carolina General Statutes Sections 160A-103 and 160A-104 grant citizens the right to institute a referendum or an initiative to change the structure of their municipal government.  Collectively, these sections grant the right to control the structure of municipal government to every citizen living in a North Carolina municipality.

78.     The Greensboro Act decrees that the City of Greensboro "shall not alter or amend the form of government for the City," including acting in response to a citizen petition for initiative or referendum.

79.     The Greensboro Act, by extinguishing the right to institute a referendum and an initiative pursuant to Sections 160A-103 and 160A-104, terminates the rights of only Greensboro citizens to control the structure of their municipal government.

80.     Because the right to determine and alter the structure of their municipal government is made available by statute to all other North Carolina municipalities and their citizens, the withdrawal of that right from the City of Greensboro alone violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

81.     Article XIV, Section 3 of the North Carolina Constitution illustrates how equal protection should prevent the Greensboro Act from taking effect, stating in

pertinent part "General laws uniformly applicable throughout the State shall be made applicable without classification or exception in every unit of local government of like kind, such as . . . every city and town. . . ."  N.C. Const. Art. XIV, § 3.

82.     In implementing and enforcing the Greensboro Act, Defendant is, under color of state law, depriving Plaintiffs of the equal protection of the law.

83.     The Greensboro Act should be enjoined from taking effect and thereby unconstitutionally depriving Citizen Plaintiffs and similarly-situated Greensboro residents of their statutory right to control the structure of their municipal government through petitions for initiative and referendum.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983, N.C. Const. Art. I, § 19**
**Violation of Equal Protection**
(*On behalf of the Citizen Plaintiffs*)

84.     The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

85.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and of Article I, Section 19 of the North Carolina Constitution guarantee the principle of one person, one vote.

86.     The one-person, one-vote requirement applies to the method of electing representatives to the Greensboro City Council.

87.     Creating an election system that significantly decreases the value of the votes of citizens in certain districts while significantly increasing the value of the votes of

- 24 -

citizens in other districts for arbitrary and discriminatory reasons violates the one-person, one-vote requirement.

88.　　Creating an election system that splits communities of interest and thereby dilutes the votes of the residents of those communities violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and of Article I, Section 19 of the North Carolina Constitution.

89.　　The North Carolina General Assembly has the responsibility to either permit the City of Greensboro to correct these fundamental imbalances or to enact local legislation creating a method of election that does not violate the one-person, one-vote requirement.

90.　　The Citizen Plaintiffs have been harmed by having their votes diluted as a result of the terms and provisions the Greensboro Act.

91.　　Candidates, election officials, and voters will be harmed by proceeding with elections under a system that is unconstitutional.

92.　　Because the Act unconstitutionally devalues the votes of certain Greensboro residents while overvaluing the votes of others without legitimate justification, it should be enjoined.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983, N.C. Const. Art. I, § 19**
**Violation of Equal Protection**
(*On behalf of the Citizen Plaintiffs*)

93.　　The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

- 25 -

94.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and of Article I, Section 19 of the North Carolina Constitution guarantee the right of Citizen Plaintiffs to be free from racial classifications absent a compelling governmental interest in such classifications.

95.     Race was the predominant factor determining the boundaries, shape and composition of District 2 in the Greensboro city redistricting plan established by Session Law 2015-138.

96.     The use of race as the predominant factor with respect to District 2 is not narrowly tailored to serve a compelling state interest.

97.     District 2, as established by Session Law 2015-138, to be used as an election district from the Greensboro City Council violates the rights of Citizen Plaintiffs to be free from racial classifications in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

*******************************

**WHEREFORE**, Plaintiffs respectfully pray the Court:

a.     Award temporary and permanent injunctive relief enjoining Defendant and its agents, officers, and employees from enforcing, implementing, or giving any effect to the Greensboro Act (i.e. Session Law 2015-138) in its entirety;

b.     Declare that the method of election established for the Greensboro City Council by Session Law 2015-138 violates equal protection as guaranteed by the

Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution;

c.　　Declare that unless the North Carolina General Assembly acts to promulgate a lawful method of election for the Greensboro City Council, the City of Greensboro must itself adopt a redistricting plan that complies with the one-person, one-vote requirement of the United States Constitution and North Carolina Constitution;

d.　　Restore, for purposes of the 2015 municipal election in the City of Greensboro, the districts and at-large seats previously in place along with the format and timetable of October primary elections and November elections and direct that candidate filing and election shall take place pursuant to that system;

e.　　Make all further orders as are just, necessary, and proper to preserve Citizen Plaintiffs' rights to participate equally in elections to the Greensboro City Council and be equally represented by members of the City Council;

f.　　Award Plaintiffs their damages in accordance with law;

g.　　Award Plaintiffs their costs, disbursement, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988;

h.　　Tax the costs of this action against Defendant; and

i.　　Grant such other relief as this Court deems just and appropriate.

This the 8th day of December, 2016.

/s/ Jim W. Phillips
Jim W. Phillips, Jr.
  N.C. State Bar No. 12516
  jphillips@brookspierce.com
Julia C. Ambrose
  N.C. State Bar No. 37534
  jambrose@brookspierce.com
Bryan Starrett
  N.C. State Bar No. 40100
  bstarrett@brookspierce.com
Brooks, Pierce, McLendon,
  Humphrey & Leonard, L.L.P.
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:   336/373-8850
Facsimile:    336/378-1001
*Attorneys for the City of Greensboro*


/s/ Anita S. Earls
Anita S. Earls
  N.C. State Bar No. 15597
  anita@southerncoalition.org
Allison J. Riggs
  N.C. State Bar No. 40028
  allison@southerncoalition.org
Emily E. Seawell
  N.C. State Bar No. 50207
  emily@southerncoalition.org
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380, ext. 115
Facsimile: 919-323-3942
*Attorneys for Plaintiffs Lewis A. Brandon III, Joyce Johnson, Nelson Johnson, Richard Alan Koritz, Sandra Self Koritz, Charli Mae Sykes, Maurice Warren II, and Georgeanna Butler Womack*

- 28 -

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has on this day electronically filed the

foregoing **Second Amended Complaint** in the above-titled action with the Clerk of the

Court using the CM/ECF system, which will serve via electronic mail the following:

Mark Payne, County Attorney
GUILFORD COUNTY
ATTORNEY'S OFFICE
P.O. Box 3427
Greensboro, NC 27402
mpayne@co.guilford.nc.us

*Counsel for Defendant*

Jim W. Phillips, Jr.
jphillips@brookspierce.com
Julia C. Ambrose
jambrose@brookspierce.com
Bryan Starrett
bstarrett@brookspierce.com
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD LLP
P.O. Box 26000
Greensboro, NC 27420-6000

*Counsel for the City of Greensboro*

Respectfully submitted this 8th day of December, 2016.

/s/ Emily E. Seawell
Emily E. Seawell

*Counsel for Citizen Plaintiffs*

- 29 -

# COMPLAINT EXHIBIT A

# GENERAL ASSEMBLY OF NORTH CAROLINA
## SESSION 2015

### SESSION LAW 2015-138
### HOUSE BILL 263

AN ACT TO MODIFY THE FORM OF GOVERNMENT IN THE CITY OF TRINITY AND TO CLARIFY THE FORM OF GOVERNMENT, METHOD OF ELECTION, AND DETERMINATION OF ELECTION RESULTS IN THE CITY OF GREENSBORO.

The General Assembly of North Carolina enacts:

## CITY OF TRINITY ELECTIONS

**SECTION 1.(a)**  Chapter III of the Charter of the City of Trinity, as enacted by S.L. 1997-44, reads as rewritten:

### "CHAPTER III.
### "GOVERNING BODY.

"Section 3-1. **Structure of the Governing Body; Number of Members.** The governing body of the City of Trinity is the City Council which has ~~eight~~ five members.

"Section 3-2. **Manner of Electing Council.** The city is divided into four wards, each with ~~two members,~~ one member, and the qualified voters of the entire city elect candidates who reside in that ward for the seats apportioned to that ward. Each ward shall have the same number of persons as nearly as practicable. Additionally, one member who resides in the city shall be elected at large by all the qualified voters of the entire city.

"Section 3-3. **Term of Office of Council Members.** Members of the Council are elected to ~~four-year~~ two-year terms. ~~In 1997, two persons shall be elected for each ward. The candidate in each ward receiving the highest number of votes is elected to a four-year term, and the candidate receiving the next highest number of votes is elected to a two-year term. In 1999 and biennially thereafter, one member shall be elected from each ward for a four-year term.~~

"Section 3-4. **Mayor; Term of Office.** In ~~1997~~ 2017 and ~~quadrennially~~ biennially thereafter, the Mayor shall be selected by the qualified voters of the city for a ~~four-year~~ two-year term.

"Section 3-5. **Vacancies.** ~~Notwithstanding G.S. 160A-63, any~~ Any person appointed to fill a vacancy in the City Council or as Mayor shall serve for the remainder of the unexpired term."

**SECTION 1.(b)**  In the 2015 election, no member shall be elected from any ward. In the 2015 election, the member to be elected at-large by all the qualified voters of the City of Trinity, as established by Section 1(a) of this act, shall be elected.

**SECTION 1.(c)**  This section applies only to the City of Trinity.

## CITY OF GREENSBORO ELECTIONS

**SECTION 2.(a)**  Notwithstanding any other provision of law, the City of Greensboro shall operate under the Council-Manager form of government in accordance with Part 2 of Article 7 of Chapter 160A of the General Statutes.

**SECTION 2.(b)**  Notwithstanding Part 4 of Article 5 of Chapter 160A of the General Statutes and G.S. 160A-23, the City of Greensboro shall not alter or amend the form of government for the City. Upon the return of the 2020 federal decennial census, the North Carolina General Assembly shall revise the districts set out in this section, if needed. The City of Greensboro may submit proposed changes to the districts set out in this section to the North Carolina General Assembly.

**SECTION 2.(c)**  Section 3.01 of the Charter of the City of Greensboro, as set forth in Section 1 of Chapter 1137 of the Session Laws of 1959, as amended by Chapter 213 of the Session Laws of 1973 and by Ordinances 82-113 and 83-7 adopted by the City Council, is amended by rewriting that section to read:



"Section 3.01. **Composition and Term of the Mayor and City Council.** The City Council shall consist of eight members, each residing in and elected from districts, who shall be elected for a term of four years beginning in 2015 in the manner provided by Chapter II. In addition, there shall be a mayor who shall be elected for a term of four years in the manner provided by Chapter II. The eight single-member districts are as follows:

**District 1**: Guilford County: VTD: FEN1: Block(s) 0810128041019, 0810128041027, 0810128041028, 0810128041029, 0810128041030, 0810128041032, 0810128041033, 0810128041034, 0810128041035, 0810128041036, 0810128051050, 0810128051065, 0810128051066, 0810168001015, 0810168001016, 0810168001017, 0810168001018, 0810168001019, 0810168001020, 0810168001021, 0810168001022, 0810168001023, 0810168001024, 0810168001025, 0810168002001, 0810168002002, 0810168002039, 0810168002040, 0810168002041, 0810168002042, 0810168002043, 0810168002044, 0810168002046, 0810168002071, 0810168002073, 0810168002074, 0810168002091, 0810171001010, 0810171001011, 0810171001012, 0810171001013, 0810171001014, 0810171001031, 0810171001033, 0810171001034, 0810171001035, 0810171001036, 0810171001037, 0810171001044, 0810171001046, 0810171001047, 0810171001048, 0810171001049, 0810171001050, 0810171001051, 0810171001059, 0810171001060, 0810171001061; VTD: G01, VTD: G02, VTD: G04, VTD: G07, VTD: G11, VTD: G67, VTD: G68, VTD: G71, VTD: G72, VTD: G74, VTD: G75: Block(s) 0810113002015, 0810113004013, 0810128032038, 0810128032039, 0810128032085, 0810128032086, 0810128032087, 0810128041000, 0810128041001, 0810128041002, 0810128041003, 0810128041004, 0810128041005, 0810128041018, 0810128051000, 0810128051001, 0810128051002, 0810128051003, 0810128051004, 0810128051005, 0810128051006, 0810128051007, 0810128051008, 0810128051009, 0810128051010, 0810128051011, 0810128051012, 0810128051013, 0810128051014, 0810128051015, 0810128051016, 0810128051017, 0810128051018, 0810128051019, 0810128051020, 0810128051021, 0810128051022, 0810128051023, 0810128051024, 0810128051025, 0810128051026, 0810128051027, 0810128051028, 0810128051029, 0810128051030, 0810128051031, 0810128051032, 0810128051033, 0810128051034, 0810128051035, 0810128051036, 0810128051037, 0810128051038, 0810128051039, 0810128051040, 0810128051044, 0810128051045, 0810128051048, 0810128051052, 0810128051053, 0810128051054, 0810128051055, 0810128051056, 0810128051060, 0810128051061, 0810128051062, 0810128051063, 0810128051064; VTD: JEF1: 0810128031062, 0810128031063, 0810128031064, 0810153002020, 0810153002022, 0810153002028, 0810153002031, 0810153002037, 0810153002038, 0810154021017, 0810154021022, 0810154021023, 0810154021029, 0810154021031, 0810154021032, 0810154021033, 0810154021036; VTD: JEF2: 0810111021019, 0810111021022, 0810111021023, 0810111021024, 0810111021025, 0810128031025, 0810128031032, 0810128031037, 0810128031040, 0810128031041, 0810128031050, 0810128031051, 0810128031054, 0810128031055, 0810128031056, 0810128031068, 0810128031070, 0810128031071, 0810128031072, 0810128031073, 0810128031089, 0810128031090, 0810128031096, 0810128032000, 0810128032001, 0810128032002, 0810128032003, 0810128032008, 0810128032009, 0810128032014, 0810128032020, 0810128032021, 0810128032025, 0810128032094, 0810153003026, 0810153003027, 0810153003035, 0810153003037, 0810153003042, 0810153003047, 0810153003048, 0810153003050, 0810153003051, 0810153003052, 0810153003053, 0810153003054, 0810153003055, 0810153003056, 0810153003057, 0810153003058, 0810153003059, 0810153003060, 0810153003061, 0810153003064, 0810153003065, 0810153003066, 0810153003067, 0810153003081, 0810153003087, 0810153003088, 0810153003089, 0810153003092; VTD: JEF3: 0810128032022, 0810128032023, 0810128032024, 0810128032030, 0810128032033, 0810128032034, 0810128032044, 0810128032057, 0810128032060, 0810128032061, 0810128032068, 0810128032069, 0810128032070, 0810128032071, 0810128032076, 0810128032078, 0810128032079, 0810128032080, 0810128032081, 0810128032082, 0810128032088, 0810128032089, 0810128032090, 0810128032093, 0810128032095, 0810172001061, 0810172001065, 0810172001068, 0810172001069, 0810172001070, 0810172001071, 0810172001072, 0810172001118; VTD: JEF4: 0810172001001, 0810172001002, 0810172001003, 0810172001004, 0810172001005, 0810172001006, 0810172001008, 0810172001009, 0810172001010, 0810172001012, 0810172001013, 0810172001014, 0810172001015, 0810172001017, 0810172001018, 0810172001019, 0810172001020,

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 32 of 43

0810172001021, 0810172001022, 0810172001025, 0810172001026, 0810172001027, 0810172001050, 0810172001051, 0810172001052, 0810172001053, 0810172001056, 0810172001057, 0810172001058, 0810172001060, 0810172001064, 0810172001079, 0810172001083, 0810172001084, 0810172001093, 0810172001094, 0810172001095, 0810172001103, 0810172001104, 0810172001105, 0810172001119, 0810172001120, 0810172001121, 0810172002030; VTD: PG1: 0810168004000.

**District 2**: Guilford County: VTD: G03, VTD: G05, VTD: G06: Block(s) 0810127052000, 0810127052011, 0810127052012, 0810127052013, 0810127052014, 0810127052015, 0810127052016, 0810127052022, 0810127052023, 0810127062000, 0810127062001, 0810127062002, 0810127062003, 0810127062009, 0810127062010, 0810127062017, 0810127071000, 0810127071001, 0810127071002, 0810127071003, 0810127071017, 0810127071018, 0810127071019, 0810127071020, 0810127071021, 0810127071022, 0810127071023, 0810128031001, 0810128031004, 0810128031005, 0810128031009, 0810128031010, 0810128031012, 0810128031013, 0810128031014, 0810128031015, 0810128031023, 0810128031026, 0810128031027, 0810128031028, 0810128031091, 0810154021016; VTD: G08, VTD: G09, VTD: G10, VTD: G24, VTD: G26: Block(s) 0810155001044, 0810155001045, 0810155001046, 0810155001050, 0810155001051, 0810155001059, 0810155001060, 0810155001061, 0810155001082, 0810157032000, 0810157032001, 0810157032002, 0810157032003, 0810157032004, 0810157032005, 0810157032006, 0810157032007, 0810157032008, 0810157032009, 0810157032010, 0810157032011, 0810157032012, 0810157032013, 0810157032014, 0810157032015, 0810157032016, 0810157032017, 0810157032018, 0810157032024, 0810157032025, 0810157032026, 0810157032027, 0810157032032, 0810157032033, 0810157032034, 0810157032035, 0810157061056, 0810157061060, 0810157061061, 0810157061062, 0810157062019, 0810157062023, 0810157062024, 0810157062025, 0810157062026, 0810157062028, 0810157062029, 0810157062030, 0810157062031, 0810157062032, 0810157062034, 0810157062039, 0810157062040, 0810157062041, 0810157062042, 0810157062043, 0810157062044, 0810157062045, 0810157062046, 0810157062047, 0810157062048, 0810157062049, 0810157062050, 0810157062051; VTD: JEF1: 0810128031021, 0810128031034, 0810128031095, 0810154021007, 0810154021008, 0810154021009, 0810154021010, 0810154021011; VTD: MON1: 0810154022015, 0810154023001, 0810154023018, 0810154024000, 0810154024002, 0810154024004, 0810154024008, 0810154024009, 0810154024010, 0810154024012, 0810154024013, 0810154024024, 0810154024028, 0810154024041, 0810154024047, 0810154024050, 0810154024051, 0810154024060, 0810154024064; VTD: MON2: 0810154011021, 0810154011024, 0810154011025, 0810154011026, 0810154011027, 0810154011028, 0810154011029, 0810154011030, 0810154011031, 0810154011032, 0810154011033, 0810154011034, 0810154011035, 0810154011036, 0810154011037, 0810154011038, 0810154011039, 0810154011042, 0810154011044, 0810154011045, 0810154011048, 0810154011049, 0810154011050, 0810154011054, 0810154011056, 0810154011057, 0810154011058, 0810154011059, 0810154011060, 0810154011061, 0810154011062, 0810154011063, 0810154011067, 0810154011068, 0810154011069, 0810154011070, 0810155001000, 0810155001001, 0810155001002, 0810155001004, 0810155001008, 0810155001009, 0810155001010, 0810155001011, 0810155001012, 0810155001017, 0810155001018, 0810155001033, 0810155001034, 0810155001035, 0810155001036, 0810155001038, 0810155001039, 0810155001043, 0810155001047, 0810155001048, 0810155001049, 0810155001052, 0810155001055, 0810155001058, 0810155001063, 0810155001064, 0810155001067, 0810155001068, 0810155001072, 0810155001077, 0810155001089, 0810155001093, 0810155001095, 0810155002000, 0810155002001, 0810155002002, 0810155002003, 0810155002004, 0810155002005, 0810155002006, 0810155002007, 0810155002008, 0810155002009, 0810155002010, 0810155002011, 0810155002013, 0810155002014, 0810155002015, 0810155002016, 0810155002017, 0810155002018, 0810155002019, 0810155002024, 0810155002025, 0810155002026, 0810155002027, 0810155002029, 0810155002035, 0810155002043, 0810155002050, 0810155002054, 0810156002113, 0810157062014, 0810157062015, 0810157062018, 0810157062027.

**District 3**: Guilford County: VTD: G12, VTD: G13, VTD: G14, VTD: G15, VTD: G16, VTD: G17, VTD: G18, VTD: G19, VTD: G20, VTD: G21, VTD: G35: Block(s) 0810125053003, 0810125053004, 0810125053005; VTD: G45, VTD: G47, VTD: G51.

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 33 of 43

**District 4**: Guilford County: VTD: G44, VTD: G46, VTD: G52, VTD: G53: Block(s)
0810128041006, 0810128041007, 0810128041008, 0810128041009, 0810128041010,
0810128041011, 0810128041012, 0810128041013, 0810128041014, 0810128041015,
0810128041016, 0810128041017, 0810128041020, 0810128041021, 0810128041022,
0810128041023, 0810128041024, 0810128041025, 0810128041026, 0810128041037,
0810128041038, 0810128041039, 0810128041040, 0810128041041, 0810128041042,
0810128042000, 0810128042001, 0810128042002, 0810128042003, 0810128042004,
0810128042005, 0810128042006, 0810128042007, 0810128042008, 0810128042009,
0810128042010, 0810128042011, 0810128042012, 0810128042013, 0810128042014,
0810128042015, 0810128042016, 0810128042017, 0810128042018, 0810128042019,
0810128042020, 0810128042021, 0810128042022, 0810168002004, 0810168002005,
0810168002006, 0810168002011, 0810168002008, 0810168002009, 0810168002010,
0810168002017, 0810168002012, 0810168002013, 0810168002015, 0810168002016,
0810168002028, 0810168002018, 0810168002020, 0810168002024, 0810168002026,
0810168002051, 0810168002029, 0810168002030, 0810168002031, 0810168002050,
0810126111037, 0810168002053, 0810168002057; VTD: G54, VTD: G55: Block(s)
0810126122003, 0810126111038, 0810126122000, 0810126122001, 0810126122002,
0810126122008, 0810126122004, 0810126122005, 0810126122006, 0810126122007,
0810126122026, 0810126122009, 0810126122010, 0810126122011, 0810126122012,
0810126123001, 0810126122027, 0810126122028, 0810126122029, 0810126123000,
0810126123006, 0810126123002, 0810126123003, 0810126123004, 0810126123005,
0810126123011, 0810126123007, 0810126123008, 0810126123009, 0810126123010,
0810126123016, 0810126123012, 0810126123013, 0810126123014, 0810126123015,
0810167011001, 0810126123017, 0810126123018, 0810126123019, 0810167011000,
0810167011006, 0810167011002, 0810167011003, 0810167011004, 0810167011023,
0810167011024, 0810167011025; VTD: G69, VTD: G70, VTD: G73, VTD: SUM1:
Block(s) 0810167011008, 0810167011009, 0810167011010, 0810167011011,
0810167011012, 0810167011013, 0810167011014, 0810167011015, 0810167011016,
0810167011017, 0810167011018, 0810167011019, 0810167011021, 0810167011022,
0810167011094, 0810167012000, 0810167012001, 0810167011092, 0810167011093,
VTD: SUM2: 0810167011058, 0810167011060, 0810167012005, 0810167012006;
0810167011067, 0810167011068, 0810167011069, 0810167011065, 0810167011066,
0810167011083, 0810167013003, 0810167013005, 0810167011070, 0810167011082,
0810167013008, 0810167013009, 0810168002023, 0810167013006, 0810167013007,
0810168002047, 0810168002049, 0810168002052, 0810168002034, 0810168002035,
0810168002056, 0810168002058, 0810168002059, 0810168002054, 0810168002055,
0810168002062, 0810168002063, 0810168002064, 0810168002060, 0810168002070,
0810168002092.

**District 5**: Guilford County: VTD: FR1: Block(s) 0810165031005, 0810165031023,
0810165031026, 0810165031027, 0810165031030, 0810165031031, 0810165031032,
0810165031033, 0810165031034, 0810165031035, 0810165031036, 0810165031037,
0810165031038, 0810165031039, 0810165031040, 0810165031041, 0810165031042,
0810165031043, 0810165031044, 0810165031045, 0810165031046, 0810165031047,
0810165031048, 0810165031049, 0810165031050, 0810165031051, 0810165032000,
0810165032001, 0810165032007, 0810165032008, 0810165032011, 0810165032012,
0810165032013, 0810165032014, 0810165032015, 0810165032016, 0810165032017,
0810165032018, 0810165032019, 0810165032020, 0810165032021, 0810165032022,
0810165032025, 0810165032026, 0810165032027, 0810165032028, 0810165032030,
0810165051004, 0810165032032, 0810165051001, 0810165051002, 0810165051003,
0810165051024, 0810165051005, 0810165051007, 0810165051009, 0810165051010,
0810165052001, 0810165052002, 0810165061000, 0810165061001, 0810165061002,
0810165061003, 0810165061004, 0810165061006, 0810165061007, 0810165061012,
0810165062000, 0810165062001, 0810165062007; VTD: FR2: 0810164051062; VTD:
FR4: 0810160081040, 0810160081041, 0810160081042, 0810160081055, 0810160081056,
0810160111008, 0810160111041, 0810160111043, 0810160111052, 0819801001014,
0819801001024, 0819801001041, 0819801001042; VTD: FR5: 0810160031039,
0810160031040, 0810160031041, 0810160031042, 0810160031043, 0810160031044,
0810160081029, 0810160081030, 0810160081036, 0810160081037, 0810160081038,

Session Law 2015-138

House Bill 263-Ratified

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 34 of 43

0810160081039, 0810160081043, 0810160081046, 0810160081047, 0810160081053, 0810160081054, 0810160081058, 0810160111053, 0810160111054, 0819801001008, 0819801001012, 0819801001013; VTD: G38, VTD: G42, VTD: G43, VTD: G62, VTD: G63, VTD: G64: Block(s) 0810160111014, 0810160111019, 0810160111020, 0810160111021, 0810160111023, 0810160111024, 0810160111025, 0810160111027, 0810160111029, 0810160111033, 0810160111036, 0810160111038, 0810160111039, 0810160111044, 0810160111046, 0810160111047, 0810160111048, 0810160111049, 0810160111055, 0810160111056, 0810160111057, 0810160111058, 0810160111059, 0810160111060, 0810160111061, 0810160111062, 0810160111064, 0810160111065, 0810160111066, 0810160111067, 0810160111068, 0810160111069, 0810160111070, 0810160111071, 0810160111072, 0810160111073, 0810160111074, 0810160111075, 0810160111076, 0810160111077, 0810160111078, 0810160111079, 0810160112000, 0810160112001, 0810160112002, 0810160112003, 0810160112004, 0810160112005, 0810160112006, 0810160112007, 0810160112008, 0810160112009, 0810160112010, 0810160112011, 0810160112012, 0810160112013, 0810160112014, 0810160112015, 0810160112016, 0810160112017, 0810160112018, 0810160113000, 0810160113001, 0810160113002, 0810160113003, 0810160113004, 0810160113006, 0810160113007, 0810160113008, 0810160114000, 0810160114001, 0810160114002, 0810160114003, 0810160114004, 0810160114005, 0810162041000, 0810162041001, 0810162041005, 0810162041017, 0810162041018, 0810162041019, 0810162041020, 0810162041021, 0810162041022, 0810162041024, 0810162041039, 0810164051000, 0810164051001, 0810164051002, 0810164051003, 0810164051004, 0810164051005, 0810164051006, 0810164051007, 0810164051008, 0810164051009, 0810164051010, 0810164051011, 0810164051012, 0810164051013, 0810164051014, 0810164051015, 0810164051016, 0810164051017, 0810164051018, 0810164051019, 0810164051020, 0810164051021, 0810164051022, 0810164051023, 0810164051024, 0810164051026, 0810164051030, 0810164051031, 0810164051032, 0810164051038, 0810164051044, 0810164051045, 0810164051046, 0810164051047, 0810164051048, 0810164051049, 0810164051050, 0810164051051, 0810164051052, 0810164051053, 0810164051059, 0810164051060, 0810164051063, 0810164061000, 0810164061001, 0810165031000, 0810165031001, 0810165031002, 0810165031003, 0810165031004, 0810165031006, 0819801001029; VTD: G65, VTD: G66, VTD: HP: Block(s) 0810164051028, 0810164051029, 0810164051039, 0810164051054; VTD: JAM2: 0810165051020, 0810165051021, 0810165051022, 0810165051023, 0810165063010, 0810165063013; VTD: JAM3: 0810165021029, 0810165021040, 0810165021041, 0810165021044, 0810165023003; VTD: JAM4: 0810165022032, 0810165022033, 0810165022036, 0810165022038, 0810165022047, 0810165022051, 0810165022054, 0810165022055, 0810165022056, 0810165022060, 0810165022062, 0810165022067, 0810165022069, 0810165022071, 0810165022073, 0810165023016, 0810165023018, 0810165023019, 0810165023020, 0810165023021, 0810165023032, 0810165023037, 0810165023038, 0810165023039, 0810165023041, 0810165023042, 0810167012048; VTD: NDRI: 0810162012004, 0810162012005, 0810162012006, 0810162012007, 0810162012008, 0810162012036, 0810162012037, 0810162012038, 0810162012039, 0810162012040, 0810162012041, 0810162012043, 0810162012044, 0810162012045, 0810162012046, 0810162012047, 0810162012048, 0810162012049, 0810162012050, 0810162012051, 0810162012052, 0810162012053, 0810162012054, 0810162012055, 0810162012056, 0810162012057, 0810162012058, 0810162012063, 0810162012064, 0810162012065, 0810162012066, 0810162012067, 0810162012068, 0810162012070, 0810162012071, 0810162012072, 0810162012073, 0810162012074; VTD: SDRI: 0810162031000, 0810162031001, 0810162031002, 0810162031003, 0810162031007, 0810162031008, 0810162031009, 0810162031010, 0810162031012, 0810162031013, 0810162031014, 0810162041002, 0810162041003, 0810162041004, 0810162041006; VTD: SUM1: 0810165022035, 0810165022040, 0810165022046.

**District 6**: Guilford County: VTD: G37, VTD: G48, VTD: G49, VTD: G50, VTD: G56, VTD: G57, VTD: G58, VTD: G59: Block(s) 0810126091028, 0810126091029, 0810126091035, 0810126091036, 0810126091037, 0810126091038, 0810126091039, 0810126091040, 0810126091041, 0810126091042, 0810126091043, 0810126091044, 0810126091045, 0810126091046, 0810126091047, 0810126091048, 0810126091049, 0810126091050, 0810126091051, 0810126091052, 0810126091053, 0810126091054, 0810126091055,

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 35 of 43

0810126091056, 0810126091057, 0810126092005, 0810126093000, 0810126093003, 0810126093013, 0810126093014, 0810126093015, 0810126093016, 0810126093017, 0810126093018, 0810126093019, 0810126093020, 0810126093021, 0810126093022, 0810126093023, 0810165022000, 0810165022001, 0810165022002, 0810165022003, 0810165022004, 0810165022005, 0810165022006, 0810165022007, 0810165022008, 0810165022075, 0810165022077; VTD: G60, VTD: G61, VTD: JAM3: Block(s) 0810126094008, 0810126094010, 0810165021004.

**District** 7: Guilford County: VTD: CG1: Block(s) 0810157041005, 0810157041010, 0810157041011, 0810157041012, 0810157041013, 0810157041014, 0810157041017, 0810157041018, 0810157041019, 0810157041020, 0810157041021, 0810157041022, 0810157041023, 0810157041024, 0810157041027, 0810157041028, 0810157041030, 0810157041032, 0810157041036, 0810157041037, 0810157041038, 0810157041039, 0810157041040, 0810157041041, 0810157041042, 0810157041043, 0810157041044, 0810157041049, 0810157041050, 0810157041051, 0810157041052, 0810157041053, 0810157041057, 0810157042010, 0810157042011, 0810157042012, 0810157042013, 0810157042014, 0810157042015, 0810157042016, 0810157051000, 0810157052003, 0810158003053, 0810158003055, 0810158003057, 0810158003066, 0810160062000, 0810160062001, 0810160062002; VTD: FR3, VTD: FR4: Block(s) 0810160091000, 0810160091001, 0810160091002, 0810160091003, 0810160091004, 0810160091005, 0810160091006, 0810160091007, 0810160091008, 0810160091009, 0810160091010, 0810160091011, 0810160091012, 0810160091013, 0810160091014, 0810160091020, 0810160091021, 0810160091024, 0810160091025, 0810160091026, 0810160091027, 0810160091045, 0810160091046; VTD: FR5: 0810160031049, 0810160031050, 0810160031052, 0810160081000, 0810160081001, 0810160081002, 0810160081003, 0810160081004, 0810160081006, 0810160081007, 0810160081008, 0810160081010, 0810160081011, 0810160081012, 0810160081013, 0810160081014, 0810160081016, 0810160081017, 0810160081018, 0810160081019, 0810160081020, 0810160081021, 0810160081022, 0810160081023, 0810160081024, 0810160081033, 0810160081057, 0810160082017, 0810160082018, 0810160082019, 0810160082020, 0810160082021, 0810160082022, 0810160082023, 0810160082024, 0810160082025, 0810160082026, 0810160082028, 0810160082029, 0810160083018, 0810160083019; VTD: G34, VTD: G35: Block(s) 0810125041000, 0810125041013, 0810125051000, 0810125051001, 0810125052000, 0810125052001, 0810125052002, 0810125052003, 0810125052004, 0810125052005, 0810125052006, 0810125052007, 0810125052008, 0810125052009, 0810125052010, 0810125052011, 0810125052012, 0810125052013, 0810125052014, 0810125052015, 0810125052016, 0810125052017, 0810125052018, 0810125052019, 0810125052020, 0810125052022; VTD: G36, VTD: G39, VTD: G40A1, VTD: G40A2, VTD: G41: Block(s) 0810160061009, 0810160061010, 0810160061011, 0810160061012, 0810160061013, 0810160071009, 0810160071010, 0810160071011, 0810160071012, 0810160071013, 0810160071014, 0810160071015, 0810160071016, 0810160071017, 0810160071018, 0810160091019, 0810160091023, 0810160091029, 0810160091030, 0810160091031, 0810160091032, 0810160091033, 0810160101005, 0810160101006, 0810160101007, 0810160101008, 0810160101009, 0810160101010, 0810160101011, 0810160101012, 0810160101013, 0810160101014, 0810160101015, 0810160101016, 0810160101018, 0810160101019, 0810160101020, 0810160102000, 0810160102001, 0810160102002, 0810160102003, 0810160102004, 0810160102005, 0810160102006, 0810160102007, 0810160102008, 0810160102009, 0810160102010, 0810160102011, 0810160102012, 0810160102013, 0810160102014, 0810160102015, 0810160102020, 0810160102021; VTD: NCGR1: 0810157041006, 0810157041007, 0810157041008, 0810157041009, 0810158003049, 0810158003050, 0810158003051, 0810158003052, 0810158003054, 0810158003056; VTD: SF1: 0810157041035, 0810158001060, 0810158001066, 0810158001068, 0810158001069, 0810158001070, 0810158003043, 0810158003046, 0810158003047, 0810158003058, 0810158003059, 0810160051006; VTD: SF3: 0810157041015, 0810157041016, 0810157041031, 0810157041033, 0810157041034, 0810157041054, 0810157041055, 0810157041056, 0810158001071, 0810158003048, 0810158003060, 0810160032000, 0810160051000, 0810160051001, 0810160051003, 0810160051004, 0810160051005, 0810160051008, 0810160051009, 0810160051010, 0810160051011, 0810160051012, 0810160051013, 0810160051014, 0810160051015, 0810160051016, 0810160051018, 0810160051019,

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 36 of 43

0810160051023, 0810160051026, 0810160051027, 0810160051028, 0810160051031,
0810160051032, 0810160051035, 0810160051037, 0810160051038, 0810160051039,
0810160051040, 0810160051041, 0810160051042, 0810160051043, 0810160051044,
0810160051045, 0810160051046, 0810160062003, 0810160062004, 0810160062005,
0810160062006, 0810160062007, 0810160062008, 0810160083003, 0810160083004,
0810160083012, 0810160092001, 0810160092001, 0810160092003; VTD: SF4:
0810160031000, 0810160031002, 0810160032001, 0810160032013, 0810160032014,
0810160032023, 0810160082000, 0810160082001, 0810160082002, 0810160082003,
0810160082005, 0810160082006, 0810160082009, 0810160082010,
0810160082011, 0810160082012, 0810160082013, 0810160082014, 0810160082015,
0810160082016, 0810160082027, 0810160083005, 0810160083006, 0810160083008,
0810160083010, 0810160083013, 0810160083014, 0810160083015, 0810160083016,
0810160083017, 0810160092004.

**District 8**: Guilford County: VTD: CG2: Block(s) 0810156001085, 0810156001086,
0810156001087, 0810157041000, 0810157041001, 0810157041002, 0810157041003,
0810157041004, 0810157041045, 0810157041046, 0810157041047, 0810157041048,
0810157061001, 0810157061002, 0810157061004, 0810157061005, 0810157061006,
0810157061014, 0810157071001, 0810157071002, 0810157071006, 0810157071007,
0810157071008; VTD: CG3A: 0810157031000, 0810157031001, 0810157031002,
0810157031004, 0810157031005, 0810157031006, 0810157031007, 0810157061068,
0810157061069, 0810157061070, 0810157061073, 0810157061074, 0810157061075,
0810157061076, 0810157061077, 0810157061078, 0810157061079, 0810157061088,
0810157061089, 0810157061090, 0810157061091, 0810157071000, 0810157071003,
0810157071009, 0810157071010, 0810157073000, 0810157073002, 0810157073004,
0810157073005, 0810157073006, 0810157073007; VTD: CG3B: 0810157061009,
0810157061016, 0810157061021, 0810157061022, 0810157061023, 0810157061024,
0810157061026, 0810157061028, 0810157061029, 0810157061030, 0810157061031,
0810157061032, 0810157061033, 0810157061034, 0810157061036, 0810157061037,
0810157061039, 0810157061041, 0810157061042, 0810157061043, 0810157061044,
0810157061045, 0810157061046, 0810157061047, 0810157061048, 0810157061049,
0810157061050, 0810157061051, 0810157061052, 0810157061053, 0810157061054,
0810157061057, 0810157061058, 0810157061059, 0810157061063, 0810157061064,
0810157061065, 0810157061066, 0810157061067, 0810157061071, 0810157061072,
0810157061080, 0810157061081, 0810157061084, 0810157061085, 0810157061086,
0810157061086, 0810157062009, 0810157062010, 0810157062012, 0810157062016,
0810157062017, 0810157062020, 0810157062021, 0810157062022, 0810157062033,
0810157062035, 0810157062036, 0810157062037, 0810157062038, 0810157062052;
VTD: G22, VTD: G23, VTD: G25, VTD: G27, VTD: G28, VTD: G29, VTD: G30, VTD:
G31, VTD: G32, VTD: G33, VTD: G40B, VTD: MON2: Block(s) 0810156002110,
0810156002112; VTD: MON3: 0810151002047, 0810151002048, 0810151002049,
0810151002050, 0810155001013, 0810155001014, 0810155001015, 0810155001016,
0810155001019, 0810155001020, 0810155001021, 0810155001023, 0810155001024,
0810155001025, 0810155001028, 0810155001030, 0810155001031, 0810155001032,
0810155001042, 0810155001092, 0810156002086, 0810156002090, 0810156002091,
0810156002092, 0810156002093, 0810156002094, 0810156002095, 0810156002107,
0810156002109, 0810156002111, 0810156002114, 0810156002115, 0810156002116,
0810156002119, 0810156003042, 0810156003043, 0810156003048, 0810157062002,
0810157062006, 0810157062013; VTD: NCGR1: 0810156001052, 0810156001071,
0810156001077, 0810156001078, 0810156001079, 0810156001080, 0810156001081,
0810156001082, 0810156001084, 0810157061000, 0810157061003, 0810157061095,
0810157062003, 0810157062007, 0810157062008; VTD: NMAD: 0810151002040,
0810151002041, 0810151002042, 0810151002043, 0810151002072; VTD: SMAD:
0810154011012, 0810154011013, 0810154011014, 0810154011015, 0810154011016,
0810154011017, 0810154011018, 0810154011019, 0810154011071, 0810154011072.

The names and boundaries of voting tabulation districts, tracts, block groups, and blocks
specified in this section are as shown on the 2010 Census Redistricting TIGER/Line Shapefiles.
If any voting tabulation district boundary is changed, that change shall not change the boundary
of a district, which shall remain the same as it is depicted by the 2010 Census Redistricting
TIGER/Line Shapefiles. If any voting tabulation district, tract, block group, or block assigned

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 37 of 43

to a district does not contain a portion of the City, the assignment of the voting tabulation district, tract, block group, or block does not alter or change the municipal limits of the City and only those areas within the municipal limits are assigned to the district. If any area within the City is not assigned to a specific district by this section, then that area shall be assigned as follows:

> (1) If the area is entirely surrounded by a single district, the area shall be deemed to have been assigned to that district.
>
> (2) If the area is contiguous to two or more districts, the area shall be deemed to have been assigned to that district which contains the least population according to the 2010 United States Census."

**SECTION 2.(d)** Section 3.23(b) of the Charter of the City of Greensboro, as set forth in Section 1 of Chapter 1137 of the Session Laws of 1959, as amended by Chapter 213 of the Session Laws of 1973 and Chapter 896 of the Session Laws of 1989, reads as rewritten:

"(b) The Mayor shall be considered and given the same status as a member of the Council for the purpose of determining a quorum of the City Council and ~~for the purpose of voting.~~ may vote only in the case of a tie amongst the members of the City Council. Provided, further, the Mayor shall have a vote in the consideration of the employment, discipline, or dismissal of the City Manager and the City Attorney. A majority of the members of the Council shall constitute a quorum to do business, but a less number may adjourn from time to time and compel the attendance of absent members by ordering them to be taken into custody. The affirmative vote of a majority of the members of the Council shall be necessary to adopt any ordinance. All other matters voted upon shall be by majority vote of the Council members present but no ordinance shall be adopted on the same day it is introduced unless five affirmative votes are received in favor of it. Nevertheless, with respect to any ordinance amending the budget to appropriate funds from the Unappropriated Fund Balance of the General Fund, the affirmative vote of ~~seven~~ three-fourths of the members of the council shall be necessary to adopt any such amendment, except in case of an emergency. For the purpose of this section, an emergency is an unforeseen occurrence or condition calling for immediate action to avert imminent danger to life, health, or property and to secure the public safety. No member shall be excused from voting except on matters involving the consideration of his own official conduct or involving his financial interest."

**SECTION 2.(e)** Section 3.81 of the Charter of the City of Greensboro, as set forth in Section 1 of Chapter 1137 of the Session Laws of 1959, and amended by Chapter 142 of the Session Laws of 1969, reads as rewritten:

"Sec. 3.81. **Mayor and Mayor Pro Tem.**

The mayor shall be the official head of the city and shall preside at council meetings. ~~He~~ Except in accordance with Section 3.23(b) of this Charter, the mayor shall have ~~a~~ no vote upon ~~all~~ measures coming before the council ~~but~~and no veto. In the absence from the city or disability of the mayor, the mayor pro tem. shall perform his duties. During the absence or disability of both the mayor and mayor pro tem. the council shall select one of its number to perform such duties.

Either the mayor or the mayor pro tem shall be a proper party to receive and accept service of all complaints, notices and other documents of a judicial nature on behalf of the city. The mayor pro tem, as well as the mayor, shall have the authority to execute contracts, deeds or other legal documents on behalf of the city, such documents having been first approved by the city attorney."

**SECTION 2.(f)** Notwithstanding any other provision of law, G.S. 163-293 shall apply to elections in the City of Greensboro.

**SECTION 2.(g)** This section applies only to the City of Greensboro.

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 38 of 43

**SECTION 3.**  Section 1(a) of this act becomes effective the first Monday in December 2015. Sections 2(c), 2(d), and 2(e) of this act become effective the first Monday in December 2015 and apply to acts of the Mayor of Greensboro on or after that date. The districts set out in Section 2(c) of this act shall be used to conduct the municipal election in 2015. The filing period for the 2015 election for the City of Trinity and the City of Greensboro shall open at 12:00 noon on July 27, 2015, and close at 12:00 noon on August 7, 2015. The remainder of this act is effective when it becomes law and applies to elections held on or after that date and to vacancies occurring on or after that date.

In the General Assembly read three times and ratified this the 2nd day of July, 2015.


s/ Philip E. Berger
   President Pro Tempore of the Senate


s/ Tim Moore
   Speaker of the House of Representatives

Case 1:15-cv-00559-CCE-JLW   Document 109   Filed 12/08/16   Page 39 of 43

# COMPLAINT EXHIBIT B

**Senate Committee on Redistricting**
**Wednesday, June 10, 2015, 11:30 AM**
**544 Legislative Office Building**

**AGENDA**

**Welcome and Opening Remarks**

**Introduction of Pages**

**Bills**

| BILL NO. | SHORT TITLE | SPONSOR |
|----------|-------------|---------|
| HB 263 | City of Trinity Terms of Election. | Representative Hurley |

**Adjournment**

# COMPLAINT EXHIBIT C

