IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CITY OF GREENSBORO, et al.,          )
                                      )
                Plaintiffs,           )
                                      )
        v.                            )                1:15-CV-559
                                      )
GUILFORD COUNTY BOARD OF              )
ELECTIONS,                            )
                                      )
                Defendant.            )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The State of North Carolina enacted an unconstitutional statute that violated the

rights of the plaintiffs, the City of Greensboro and a number of individual Greensboro

residents, who brought a successful challenge to the law.  The individual plaintiffs move

for attorney's fees incurred successfully challenging this unconstitutional law which, as

prevailing parties, they should ordinarily recover.  The plaintiffs named one defendant in

the case, the Guilford County Board of Elections.  The County Board had the statutory

duty to enforce the unconstitutional law, but it had nothing to do with passing it, nor did

it defend the law in court.  The plaintiffs did not name the State or any state entity or

actor as a defendant.  Despite notice and statutory rights to intervene, neither the leaders

of the General Assembly nor the Attorney General appeared in court to defend the Act or

to concede that it was unconstitutional.

The Court is therefore forced to choose between two bad options:  assessing

attorney's fees against a litigant who neither enacted nor defended the unconstitutional

Act, or denying a fee award to the individual plaintiffs and their lawyers who prevailed on the merits of two equal protection claims, vindicating important constitutional rights. Neither outcome is just.

Faced with this dilemma, the Court concludes that in the peculiar circumstances of this case, it would be unjust to require the County Board to pay the individual plaintiffs' attorney's fees. The plaintiffs chose not to include any state entities or agents as defendants and the County Board did not enact the unconstitutional law or defend it in any way. In its discretion, the Court will deny the individual plaintiffs' motion.

## I.   BACKGROUND

### A.  Relevant Procedural History

In 2015, the North Carolina General Assembly passed N.C. Session Law 138 ("the Act"), changing the Greensboro City Council from a three-at-large, five-single-district council to an eight-single-district council and drawing lines for the new districts. 2015 N.C. Sess. Laws 138, City of Greensboro Elections, *available at* Doc 1-1. The Act also prohibited the City Council or citizen-led referendums and initiatives from changing the city government. *Id.* at § 2.(b).

Soon thereafter, several individual plaintiffs and the City of Greensboro filed suit challenging the Act's constitutionality. They raised equal protections claims, including a claim arising from population disparities among the new districts that appeared to be based on race and partisan affiliations of incumbents. They asked this Court to declare the Act unconstitutional and to enjoin its enforcement. Doc. 1.

The complaint named only one defendant: the Guilford County Board of Elections, the entity assigned responsibility under state law for conducting municipal elections for the City of Greensboro. Doc. 1. Under North Carolina law, any lawsuit seeking to enjoin a local election must include the county election board as a necessary party. *Wright v. North Carolina*, 787 F.3d 256, 262-63 (4th Cir. 2015). Under the Eleventh Amendment, the State of North Carolina has immunity from suit in these circumstances, *see Wright*, 787 F.3d at 261 n. 2, and it was not named as a defendant.

The Court entered a preliminary injunction blocking the Act's implementation on July 23, 2015. Doc. 36. After the County Board filed an answer, Doc. 50, discovery commenced. Doc. 57.

No one substantively defended the Act's constitutionality. The County Board reasonably took the position that it had a duty to fairly and impartially administer whatever elections laws validly apply and that it had no duty to determine whether a law is constitutional. *E.g.*, Doc. 100-1 at 5; *see* N.C. Gen. Stat. §§ 163-33, 163-284(b) (West, Westlaw through 2017 Regular Session). The County Board was not involved with passing the Act and other than its records, it possessed no significant evidence relevant to the plaintiffs' equal protection claims. It offered no evidence or legal argument in support of the Act at any stage, and limited its participation to providing information to and complying with orders from this Court. While it did not concede that the Act was unconstitutional, it did nothing to impede, obstruct, or delay the plaintiffs' challenge. To the contrary, the County Board stipulated to many facts, simplifying the trial and reducing the plaintiffs' costs. Doc. 123.

Despite receiving notice of the litigation as required by state law, Doc. 31-2, the North Carolina Attorney General did not make an appearance to defend the Act. Legislative leaders possessing the statutory right to intervene, N.C. Gen. Stat. § 1-72.2 (West, Westlaw through 2017 Regular Session), were also aware of the litigation and took no steps to defend the Act in court. *See* Doc. 134 at 137-39. The primary legislative sponsor of the Act invoked legislative privilege and refused to be deposed. *See* Doc. 125.

The Court allowed a group of individual citizens to intervene to defend the Act. Doc. 53. The defendant-intervenors moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(7), contending that the plaintiffs had failed to join necessary parties—namely, the State of North Carolina, the State Board of Elections, the State Board's executive director, and Governor Patrick McCrory. Doc. 61. In the alternative, the defendant-intervenors asked the Court to join these same entities and persons as necessary parties. *Id.* The plaintiffs objected, contending that all were immune from suit under the Eleventh Amendment to the U.S. Constitution and that none were necessary for the relief sought. Doc. 63 at 10-19. The County Board filed no response to the plaintiffs' motion and took no position on the defendant-intervenors' motion.

The Court denied the motion, finding that "[w]hile some of these persons and entities might well be proper parties to this lawsuit . . . none are necessary parties." Doc. 72 at 1. The Court also observed that should permanent relief be granted, there was no reason to think that it could not be obtained from the County Board. *Id.* at 2-3.

After discovery closed, and shortly after their response to the plaintiffs' motion for partial judgment on the pleadings was due, the defendant-intervenors moved to withdraw,

concluding that there was no defense to the plaintiffs' claims in light of the Fourth

Circuit's decision in *Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d

333 (4th Cir. 2016) (striking down legislative redistricting of county school board on

same arguments presented in this case) (hereinafter "*RWCA*"). *See* Doc. 103. This

motion was allowed, Doc. 107, and the intervenor-defendants did not respond to the

plaintiffs' dispositive motion or participate in the trial.

The case was tried in February 2017. The Court found that the Act violated the

Equal Protection Clause of the United States Constitution. Docs. 135, 136. On April 3,

2017, the Court permanently enjoined enforcement of the Act. Doc. 137. After the

appeal period passed, the individual plaintiffs[1] moved for an award of attorney's fees,

expert fees, and expenses from the County Board. Doc. 147. They rely on 42 U.S.C. §

1988, 52 U.S.C. § 10310(e), and Federal Rule of Civil Procedure 54.

## B.  Applicable Legal Principles

A prevailing party in a civil rights case brought to enforce constitutional rights

may recover attorney's fees. 42 U.S.C. § 1988(b). "The purpose of § 1988 is to ensure

effective access to the judicial process for persons with civil rights grievances." *Hensley*

*v. Eckerhart,* 461 U.S. 424, 429 (1983);[2] *accord Lefemine v. Wideman*, 758 F.3d 551,

---

[1] The motion for attorney's fees and costs is filed on behalf of individual plaintiffs Lewis A. Brandon III, Joyce Johnson, Nelson Johnson, Richard Alan Koritz, Sandra Self Koritz, Charli Mae Sykes, Maurice Warren II, and Georgeanna Butler Womack. As previously noted, the City of Greensboro was also a plaintiff in this action, but it is not a party to this motion and has not filed its own motion for attorney's fees.

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *United States v. Marshall*, 872 F.3d 213, 217 n. 6 (4th Cir. 2017).

555 (4th Cir. 2014). In light of the purpose of § 1988, a prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley,* 461 U.S. at 429. The special circumstances exception is "narrow" and applies "only on rare occasions." *Lefemine*, 758 F.3d at 555.

While special circumstances are "few and far between," *id.*, courts do sometimes find special circumstances that justify denying fees. Courts principally deny attorney's fees when an award would not advance the purpose of § 1988, *see, e.g., Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991) (denying fees to *pro se* attorney-plaintiff because fee award would not advance "the overriding statutory concern . . . in obtaining independent counsel for victims of civil rights violations"), or when a plaintiff's suit does not vindicate civil rights. *See, e.g., Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir. 1976) (denying fees because the plaintiffs' suit was filed after the plan was amended to abolish any discriminatory impact). On the rare occasion, courts may also invoke special circumstances to prevent inequity. *See Little Rock Sch. Dist. v. Ark. State Bd. of Educ.*, 928 F.2d 248, 249 (8th Cir. 1991) (denying fees when intervenor's counsel already had been granted more than $3 million in fees and the State had opposed the intervenors' position only in one discrete part of the case).

On the other hand, it is not a special circumstance when a plaintiff can afford to pay for an attorney or when a defendant acts in good faith. *Bills v. Hodges*, 628 F.2d 844, 847 (4th Cir. 1980). Nor is it a special circumstance when a defendant is entitled to immunity from money damages or when there is an absence of governmental policy or custom of discrimination. *Lefemine*, 758 F.3d at 557-58. The financial impact of a fee

award on taxpayers is not a special circumstance.  *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994) (the fact that taxpayers ultimately would be required to pay attorney's fees is an improper ground for denying or reducing an attorney's fee under § 1988).

Under a different statute, a prevailing party also may recover reasonable expert fees.  Section 10310(e) of Title 52 states in relevant part that "in any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party . . . reasonable expert fees . . . as part of the costs."  The standard for awarding expert fees under § 10310(e) is the same as the standard under § 1988.  *See, e.g., Bly v. McLeod*, 605 F.2d 134, 138 (4th Cir. 1979) (stating that sections 1973L(e), which was transferred to section 10310(e), and 1988 are "phrased in identical terms, and we apply the same rule of decision under both").

Finally, a prevailing party is generally entitled to recover its costs under Federal Rule of Civil Procedure 54(d), which provides "costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  While an award of costs is within the sound discretion of the court, *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013), "the rule gives rise to a presumption in favor of an award of costs to the prevailing party," *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994), and costs should be denied only if there is "some good reason for doing so."  *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999).  Good reasons may include excessive costs, actions taken by the prevailing party which unnecessarily prolonged trial or injected meritless issues, a recovery so small that the prevailing party is victorious in

name only, that the case in question was a close and difficult one, the resources of the

parties, efforts to mitigate damages, and the outcome of the underlying suit.  *Teague*, 35

F.3d at 996.  Good faith on the part of the non-prevailing party, while a factor, is of itself

an insufficient basis for refusing to assess costs.  *Id.*  Rather, the good faith of a losing

party is a "virtual prerequisite to a denial of costs in favor of the prevailing party."  *Id.*;

*see also Turner v. United States*, 736 F. Supp. 2d 980, 1024 (M.D.N.C. 2010).

### C.  DISCUSSION

#### A.  The Individual Plaintiffs Are Prevailing Parties

As a preliminary matter, the Court finds that the individual plaintiffs are prevailing

parties within the meaning of 42 U.S.C. § 1988, 52 U.S.C. § 10310(e), and Rule 54(d).

They successfully obtained injunctive relief on the merits for two separate equal

protection claims.  Doc. 136 at 21-22; Doc. 135 at 20-21;  *Buckhannon Bd. & Care*

*Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (A

"prevailing party" is "a party in whose favor a judgment is rendered" or "one who has

been awarded some relief by the court.").  Thus, nothing else appearing, the plaintiffs are

ordinarily entitled to an award of reasonable attorney's fees, expert fees, and costs.

#### B.  Attorney's Fees and Expert Fees

In the usual civil rights case involving a constitutional violation, the person or

entity responsible for the unconstitutional law or action is a defendant and can be ordered

to pay the other side's attorney's fees.  *See, e.g., Pulliam v. Allen,* 466 U.S. 522, 543–544

(1984) (holding that the defendant magistrate whose bail practices were unconstitutional

was liable for fees under § 1988); *Hensley*, 461 U.S. at 426 (noting that state hospital

8

officials were required to pay attorneys' fees after a finding that hospital violated

constitutional rights of persons involuntarily confined); *City of Riverside v. Rivera*, 477

U.S. 561, 575-81 (1986) (ordering the city to pay attorney's fees for its police officer's

constitutional violation). Here, however, the entity responsible for the unconstitutional

law – the State of North Carolina – is not a party to the litigation, nor is any state entity or

state official, and thus the State cannot be taxed with paying the individual plaintiffs' fees

and costs. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that when a

plaintiff does not prevail against a particular defendant because of legal immunity, "§

1988 does not authorize a fee award against that defendant.")

The County Board accurately points out that it is, in key ways, an innocent party.

The North Carolina General Assembly passed the unconstitutional law, not the County

Board. Under North Carolina law, enforcement responsibility for municipal elections,

and thus for the unconstitutional Act, is with the County Board, rather than with a state

entity, N.C. Gen. Stat. § 163-284(b), [3] and state law required the County Board to enforce

the challenged Act unless it was found to be unlawful. *See*, *e.g.*, N.C. Gen. Stat. § 163-

33(1) (prohibiting a county board of elections from acting "inconsistent with law" or with

the State Board of Election's rules); § 163-33(16) *as amended by* N.C. Sess. Law 2016-

125, § 20(c) (adding subsections 15 and 16) (explicitly prohibiting, as of December 16,

2017, county board of elections from altering or amending a redistricting plan for a unit

---

[3] By statute, North Carolina has established election boards for each county. N.C. Gen. Stat.
§ 163-33. Responsibility for local elections is delegated to these county election boards. *Id.*

of local government). Yet if the motion is granted, the attorney's fees will be paid by

Guilford County, not by the State, which was responsible for the unconstitutional law.[4]

As the Fourth Circuit recently pointed out, § 1988 does not punish "bad

defendants" but instead "compensate[s] civil rights attorneys who bring civil rights cases

and win them." *Lefemine,* 758 F.3d at 557. Here, however, there is more to it than just

an innocent County Board. *See Peter v. Jax*, 187 F.3d 829, 837 (8th Cir. 1999) (holding

that several reasons, taken together, amounted to special circumstances that made a fee

award unjust); *Thorsted v. Munro*, 75 F.3d 454, 456 (9th Cir. 1996) (holding that "the

district court did not abuse its discretion by denying fees based on the totality of the

circumstances" even though "several of the circumstances identified by the district court

would be insufficient, standing alone to warrant a denial of fees").

In this case, the plaintiffs chose not to include any of representatives of the State—

the responsible entity here—as defendants. While the State itself, the governor, and the

State's legislative leaders were immune from this kind of suit under the Eleventh

Amendment at the time this action was brought,[5] Eleventh Amendment immunity is an

---

[4] It is undisputed that the County Board would pay any attorney's fee award, not the State.
No party has suggested a mechanism for the County Board to seek State reimbursement for any
payment of attorney's fees it is required to make.

[5] Under the Eleventh Amendment, states possess sovereign immunity and private parties may
not haul them into federal court. *Fed. Mar. Comm'n v. S.C. State Ports Auth.* 535 U.S. 743, 760
(2002). There is a limited exception: courts have consistently permitted suits against state
officers for injunctive relief. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89,
102–03, (1984). However, only state officers who have a "connection with the enforcement of
the act" are appropriate defendants, and the "special relation" must exist between the state
official being sued and the challenged action. *Ex parte Young*, 209 U.S. 123, 157 (1908); *see
S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008).

affirmative defense that can be waived.[6] *See Wisc. Dep't of Corr. v. Schacht*, 524 U.S.

381 (1998) (finding that the state can waive its sovereign immunity defense).  Similarly,

the State Board's Executive Director or the members of the State Board might not have

asserted Eleventh Amendment immunity and it is not certain they would have prevailed if

they had asserted such a defense.[7]  In addition, the plaintiffs affirmatively resisted the

defendant-intervenors' motion to add any state entities or actors as defendants in the case.

Doc. 63.  An award of attorney's fees against a defendant who was not responsible and

did not defend the act would, in these circumstances, provide a perverse incentive to

plaintiffs to avoid suing responsible entities in favor of a non-responsible entity,

especially if that entity is unlikely to contest relief.

 And indeed here, the County Board did not defend the Act, acting at all times

consistent with its view that its role was to follow the law, not to be an advocate.  *See,*

---

[6] The Court appreciates that this defense almost certainly would have been raised as to these defendants and if raised, it almost certainly would have been successful.  In a recent case on almost identical facts where the State and state officials were sued, the State of North Carolina, the governor, and legislative leaders did assert immunity, and in an opinion issued just weeks before this case was filed, the Fourth Circuit agreed with the trial court that these defendants were entitled to such immunity.  *Wright,* 787 F.3d at 261-63.

[7] In ruling on the intervenor-defendants' motion to dismiss or join necessary parties, the Court held that State Board's Executive Director was not a necessary party, Doc. 72, noting that the County Board had successfully complied with the preliminary injunction governing city council elections the year before without State Board involvement.  However, this Court did not say that the State Board's Executive Director was not a proper party.  Likewise, *Wright* does not say that a County Board is the only proper defendant.  787 F.3d at 262-63.  In fact, *Wright* provides some support for the proposition that the plaintiffs could have sued the State Board's Executive Director.  *See id.* at 262 (stating "as is the case with all election plans in North Carolina, the county Board of Elections, in cooperation with the State Board of Elections, has the specific duty to enforce the challenged redistricting plan"); *see also Republican Party of North Carolina v. Martin,* 682 F. Supp. 834, 835 (M.D.N.C. 1988).

*e.g.,* Doc. 27. While it did not concede that the Act was unconstitutional, it did not claim

that the Act was constitutional or take any action to support the Act's constitutionality. It

stipulated to many facts, *see* Doc. 126, and never filed a brief contesting any aspect of the

plaintiffs' substantive case. It cooperated in simplifying the case. *See*, *e.g.,* Doc. 25

(accepting service); Doc. 56 (agreeing to discovery plan); Doc. 115 (agreeing to joint trial

exhibits). It identified no witnesses and called no one to testify.

Finally, denying fees in this case is unlikely to deter citizens in similar situations

from filing suit or lawyers from representing them, as state law has since been amended

to require that the State "shall be a party" in similar suits in the future. 2016 N.C. Sess.

Law 109 § 2.(a), (c) (codified at N.C. Gen. Stat. § 1-72.3 and effective for actions filed

on or after August 1, 2016).[8] Thus, going forward, the State has waived its Eleventh

Amendment immunity as to this kind of lawsuit. *See id.*

The individual plaintiffs point to other cases where courts have required entities to

pay attorney's fees when the entity was not responsible for the unconstitutional act. In

those cases, however, the action at issue was state action and the entities required to pay

---

[8] After *Wright* and this action were filed, the General Assembly enacted a law requiring that in any action filed on or after August 1, 2016, challenging "the validity or constitutionality of a local act," the State "shall be a party." 2016 N.C. Sess. Law 109 § 2.(a), (c) (codified at N.C. Gen. Stat. § 1-72.3.). The phrase "local act" refers to "an act of the General Assembly applying to one or more specific cities by name, or to all cities within one or more specifically named counties." N.C. Gen. Stat. § 160A-1(5) (West, Westlaw through 2017 Regular Session). The legislation redistricting the City of Greensboro was a local act. Accordingly, for actions filed after that effective date, the State is required to participate in civil rights litigation "in any court" over local bills the General Assembly has enacted.

were state entities, not county entities.[9]  *See, e.g., Navajo Nation v. Az. Indep.*

*Redistricting Comm'n*, 286 F. Supp. 2d 1087, 1090, 92, 96 (D. Ariz. 2003) (awarding

attorney's fees against the Arizona Secretary of State in lawsuit challenging the Arizona

Independent Redistricting Commission's 2001 plan under § 2 of the Voting Rights Act

and the Arizona legislature's 1994 plan on one person, one vote grounds); *Hastert v. Ill.*

*State Bd. of Elections,* No. 92-1397, 1994 U.S. App. LEXIS 13101, *39 at n.16 (7th Cir.

June 1, 1994) (awarding attorney's fees against the Illinois State Board of Elections in

successful one-person-one-vote challenge to Illinois congressional districts when state

legislature failed to enact a constitutional redistricting plan after the 1990 census).

### C.  Costs

For the same reasons stated above as to attorney and expert fees, the court will not

require the County Board to pay the individual plaintiffs' costs.

### D.  Conclusion

The entity responsible for violating the plaintiffs' constitutional rights is not

before the Court.  Thus, if the Court grants the individual plaintiffs' motion, the financial

effects will fall on the County Board, which neither passed nor defended the Act.  On the

---

[9] The individual plaintiffs also point out that the *Wright/RWCA* district court determined on remand that the special circumstances exception did not apply and awarded the plaintiffs' attorney's fees.  *Raleigh Wake Citizens Ass'n v. Wake Cnty Bd. of Elections*, Nos. 5:15CV156-D, 5:13CV607-D, 2017 WL 4400754 (E.D.N.C. Sept. 7, 2017).  This case is distinguishable in at least two ways that matter.  First, the *Wright/RWCA* plaintiffs, unlike the plaintiffs here, attempted to sue the party actually responsible for the constitutional violation.  *See Wright*, 787 F.3d at 260-61.  Second, and more importantly, the Wake County Board of Elections mounted a defense: they cross-examined the plaintiffs' witnesses, briefed the issues, and argued that the plaintiffs were not entitled to relief.  *RWCA*, 827 F.3d at 339.  Again, this case is different.  The Guilford County Board mounted no defense whatsoever.

other hand, if the Court denies the motion, then counsel for the individual plaintiffs will not receive compensation ordinarily authorized by federal law, despite vindicating critical constitutional rights. Neither outcome is just.

Placed squarely on the horns of a dilemma, the Court concludes that leaving the individual plaintiffs to bear their own costs is the lesser of these two unjust results. The plaintiffs could have attempted to bring in the responsible party—the State or its representatives—but they did not. *See* discussion *supra* Part II.B. The County Board did not defend the Act and did not contest relief. Because of the change in state law, this problem is unlikely to recur and the denial of fees is unlikely to discourage litigants and lawyers from filing these kinds of constitutional challenges. A different decision—i.e., awarding fees to the individual plaintiffs—would perversely encourage future plaintiffs to avoid suing responsible entities, in favor of defendants unlikely to contest relief. These special circumstances, taken together, call for denial of the motion.

It is **ORDERED** that the individual plaintiffs' request for attorney's fees, expert fees, and non-taxable costs, Doc. 147, is **DENIED**.

This the 3rd day of January, 2018.

UNITED STATES DISTRICT JUDGE