**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1123

LEWIS A. BRANDON III; JOYCE JOHNSON; NELSON JOHNSON; RICHARD ALAN KORITZ; SANDRA SELF KORITZ; CHARLI MAE SYKES; MAURICE WARREN II; GEORGEANNA BUTLER WOMACK,

        Plaintiffs - Appellants,

and

THE CITY OF GREENSBORO,

        Plaintiff,

    v.

GUILFORD COUNTY BOARD OF ELECTIONS,

        Defendant - Appellee,

and

MELVIN ALSTON; JEAN BROWN; HURLEY DERRICKSON; STEPHEN GOLIMOWSKI; WAYNE GOODSON; SHARON KASICA; JIM KEE; WILLIAM CLARK PORTER; EARL JONES,

        Defendants,

and

ROBERT A. RUCHO; WADE TRUDY; JOHN FAIRCLOTH; JON HARDISTER; CHARLES E. JETER; TIM MOORE; DAVID LEWIS; ERIKA CHURCHILL,

        Respondents.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:15-cv-00559-CCE-JLW)

Argued:  October 30, 2018                                        Decided:  April 15, 2019

Before NIEMEYER, THACKER, and RICHARDSON, Circuit Judges.

Reversed and remanded by published opinion.  Judge Niemeyer wrote the majority opinion, in which Judge Thacker joined.  Judge Richardson wrote a dissenting opinion.

**ARGUED:**  Allison J. Riggs, SOUTHERN COALITION FOR SOCIAL JUSTICE, Durham, North Carolina, for Appellants.  J. Mark Payne, GUILFORD COUNTY ATTORNEY'S OFFICE, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Jaclyn A. Maffetore, SOUTHERN COALITION FOR SOCIAL JUSTICE, Durham, North Carolina, for Appellants.  Taniya D. Reaves, GUILFORD COUNTY ATTORNEY'S OFFICE, Greensboro, North Carolina, for Appellee.  Alan W. Duncan, Stephen M. Russell, Jr., MULLINS DUNCAN HARRELL & RUSSELL, PLLC, Greensboro, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

After eight voting citizens of Greensboro, North Carolina, ("Citizens") prevailed in an action under 42 U.S.C. § 1983 against the Guilford County Board of Elections, successfully challenging as unconstitutional a 2015 state law that redrew Greensboro City Council districts and obtaining a permanent injunction against the County Board's enforcement of the law, they filed a motion for attorney's fees, expert fees, and costs under 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e). The district court denied their motion, however, concluding that "special circumstances" justified the denial of fees because the County Board, even though responsible for enforcing the unconstitutional law, had no hand in enacting the law and did not defend it during the litigation. The court reasoned that because the County Board was an "innocent" or "non-responsible" party and the Citizens should have sued the State of North Carolina, any award assessed against the County Board would be "unjust."

The Citizens filed this appeal, arguing that the district court erred in denying their motion based on the County Board's "innocence" or "non-responsibility." The Citizens point out that they were the prevailing party, having succeeded in demonstrating that the redistricting law was unconstitutional and in obtaining full relief with the entry of a permanent injunction prohibiting the County Board's enforcement of the law. They argue that under established precedent, a party enjoined from enforcing an unconstitutional law, even if it did not enact or defend the law, is legally responsible for attorney's fees under § 1988 and § 10310(e). *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 763 (1989) (noting that "the party *legally responsible for relief* on

3

the merits" is "clearly the party who should . . . bear fee liability under § 1988" (emphasis added) (quoting *Kentucky v. Graham*, 473 U.S. 159, 164 (1985))).

We agree with the Citizens. Civil rights fee-shifting statutes, such as those at issue here, are not meant to punish defendants for a lack of innocence or good faith but rather to "compensate civil rights attorneys who bring civil rights cases and win them." *Lefemine v. Wideman*, 758 F.3d 551, 557 (4th Cir. 2014). "Innocence" or a "lack of responsibility" for the enactment of an unconstitutional law is therefore not an appropriate criterion to justify denying a fee award against the party responsible for and enjoined from enforcing the unconstitutional law. Accordingly, we reverse the district court's order denying the Citizens' motion for attorney's fees, expert fees, and costs and remand for the determination of an appropriate fee award.

I

The City of Greensboro and eight of its voting Citizens[*] commenced this action under 42 U.S.C. § 1983, challenging the constitutionality of a state-enacted local law — 2015 N.C. Session Law 138 ("the Redistricting Act") — that (1) changed Greensboro's City Council from three at-large and five single-district members to eight single-district members; (2) drew the boundaries of the eight new districts; and (3) prohibited City Council or citizen-led referendums or initiatives from altering the structure of the City's government. The plaintiffs named the Guilford County Board of Elections as the

---

[*] The individual plaintiffs are Lewis A. Brandon III, Joyce Johnson, Nelson Johnson, Richard Alan Koritz, Sandra Self Koritz, Charli Mae Sykes, Maurice Warren II, and Georgeanna Butler Womack.

4

defendant, as the County Board was responsible for conducting municipal elections in Greensboro and had the duty of enforcing the Redistricting Act, making it a necessary party to any action challenging enforcement of the Act.  *See Wright v. North Carolina*, 787 F.3d 256, 262–63 (4th Cir. 2015).  In their complaint, the plaintiffs alleged that the Redistricting Act violated the Equal Protection Clause and sought a permanent injunction against its enforcement.  They did not, however, name the North Carolina General Assembly and the North Carolina Attorney General as defendants, believing them to be immune under the Eleventh Amendment, but those state representatives had notice of the action and chose not to intervene.

    A month after this action was commenced, several Greensboro residents filed a motion to intervene as defendants to support the Redistricting Act, and the district court granted their motion.  Several months later, these defendant-intervenors filed a motion to dismiss the action for failure to join necessary parties or, in the alternative, to require that those parties be joined, contending that the State of North Carolina, the North Carolina State Board of Elections, the State Board's Executive Director, and the Governor were all necessary parties.  Both the City of Greensboro and the Citizens opposed the motion, arguing that all of the parties sought to be joined were immune from suit under the Eleventh Amendment and that none were necessary for the relief sought.  The County Board took no position on the motion.  The district court denied the motion, concluding that "while some of these persons and entities might well be proper parties . . . none [were] necessary parties."  The defendant-intervenors subsequently filed a motion to withdraw from the litigation, and the court granted their motion.

5

Following a bench trial, during which the County Board took no position on the constitutionality of the Redistricting Act, the district court found that the Act violated the Equal Protection Clause and, by order dated April 13, 2017, permanently enjoined the County Board from enforcing it.

As prevailing parties, the eight Citizens, but not the City of Greensboro, then filed a motion under 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e) for an award of attorney's fees, expert fees, and costs. Following briefing, the district court denied the motion. The court, recognizing that prevailing parties "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), concluded that this case presented "special circumstances" because the County Board neither enacted nor defended the unconstitutional law and was thus, in the court's view, "an innocent party" in "key ways." The court also noted that the Citizens did not sue the State of North Carolina, which the court considered "the responsible entity here." Faced with the "dilemma" of having to "choose between two bad options — assessing attorney's fees against a litigant who neither enacted nor defended the unconstitutional Act, or denying a fee award to the individual plaintiffs and their lawyers who prevailed on the merits of two equal protection claims, vindicating important constitutional rights" — the court elected to favor the County Board, concluding that "it would be unjust to require the County Board to pay the individual plaintiffs' attorney's fees." The court reasoned that "[a]n award of attorney's fees against a defendant who was not responsible and did not defend the Act would, in these circumstances, provide a perverse incentive to plaintiffs to avoid suing

6

responsible entities in favor of a non-responsible entity, especially if that entity is unlikely to contest relief."

From the district court's order dated January 3, 2018, denying the Citizens' motion for fees, the Citizens filed this appeal.

II

In enacting the Civil Rights Attorney's Fees Award Act of 1976, Congress created an exception to the "American Rule" that each party to a lawsuit bear its own attorney's fees, doing so in furtherance of the policy of facilitating access to judicial process for the redress of civil rights grievances. *See* H.R. Rep. No. 94-1558, at 1 (1976); S. Rep. No. 94-1011, at 2 (1976). The Act provides accordingly that in any proceeding under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Similarly, in 52 U.S.C. § 10310(e), Congress provided that, for actions enforcing the voting guarantees of the Fourteenth and Fifteenth Amendments, a court "may allow the prevailing party . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." Because the language of § 1988 and § 10310(e) are "phrased in identical terms," we apply "the same rule of decision under both of them." *Bly v. Mcleod*, 605 F.2d 134, 138–39 (4th Cir. 1979).

While both statutes include in the authorization for fees the permissive "may allow," the Supreme Court has held that a prevailing party should "*ordinarily* recover an attorney's fee *unless special circumstances* would render such an award unjust."

7

*Hensley*, 461 U.S. at 429 (emphasis added). Moreover, the Court has concluded that a "court's discretion to deny a fee award to a prevailing plaintiff is narrow." *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980); *see also Doe v. Bd. of Educ. of Balt. Cnty.*, 165 F.3d 260, 264 (4th Cir. 1998) (noting that "[o]nly *on rare occasions* does a case present [special] circumstances" warranting a denial of fees to a prevailing party (emphasis added)); *Consumers Union, Inc. v. Va. State Bar*, 688 F.2d 218, 222 (4th Cir. 1982) (noting that the "special circumstances" exception is "*narrowly limited*" (emphasis added)). Consequently, we have not hesitated to reverse district courts that have found "special circumstances" where none existed. *See Lefemine*, 758 F.3d at 556–59 (concluding that no "special circumstances" existed and reversing a denial of a § 1988 fee motion on that ground); *Consumers Union*, 688 F.2d at 221–22 (same); *Bills v. Hodges*, 628 F.2d 844, 847 (4th Cir. 1980) (same, holding that neither a "plaintiff['s] ability to pay attorneys' fees" nor "a defendant's good faith" qualify as "a special circumstance that would render an award of fees unjust").

The Citizens contend that the reasons the district court gave are legally irrelevant to the denial of fee awards under § 1988 and § 10310(e) and that the court failed to recognize the narrowness of the "special circumstances" exception. They note that the district court found as its reasons for the denial of fees (1) that the County Board was an "innocent party" and was "not responsible" for enacting the Redistricting Act, did not defend it, and participated minimally in the litigation and (2) that the Citizens chose to sue only the County Board and not the State or its representatives. The Citizens argue that these reasons are insufficient:

8

> [T]he consensus among the federal courts is that a defendant's good faith does not justify a denial of fees. Fee awards against neutral enforcement entities — who are often simply nominal defendants in civil rights lawsuits challenging the constitutionality of state laws that the entities did not pass — are "run-of-the-mill occurrences," *Consumers Union*, 688 F.2d at 222 (quoting *Supreme Court of Va. v. Consumers Union, Inc.*, 446 U.S. 719, 739 (1980)).

Indeed, they maintain that such fee awards are "the norm" in redistricting cases, where officials and entities — even though not responsible for enacting the challenged law — are nonetheless charged with conducting elections under it and therefore are sued over its constitutionality. *See Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430 (7th Cir. 1993); *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, No. 5:15-cv-156-D), 2017 WL 4400754 (E.D.N.C. Sept. 29, 2017). The Citizens also contend that the fact that they sued only the County Board and not the State has no "bearing on whether they are entitled to fees." For these reasons, they argue that the district court's opinion is an outlier decision, standing apart from the "near-unanimous precedent[s]" on the subject, and therefore should be reversed for abuse of discretion.

In its Memorandum Opinion and Order denying the Citizens a fee award, the district court observed that the North Carolina General Assembly, not the County Board, enacted the unconstitutional Redistricting Act. It reasoned therefore that because the blame for the Act's unconstitutionality lay with the State, the Citizens' fees should be paid by the State, not the County Board. Although the court recognized that the state defendants would possibly enjoy sovereign immunity, it noted that such immunity is "an affirmative defense that [could] be waived." The court ultimately concluded that "an award of attorney's fees against a defendant who was not responsible and did not defend

9

the act would, in these circumstances, provide a perverse incentive to plaintiffs to avoid suing responsible entities in favor of a non-responsible entity, especially if that entity is unlikely to contest relief."

In reaching this conclusion, however, the district court seemed to have doubts about denying the Citizens their fees, suggesting that both parties were entitled to win on the motion and that the court was therefore presented with "a dilemma" on how to rule. While it recognized that if it denied the Citizens' motion, their counsel would "not receive compensation ordinarily authorized by federal law, despite vindicating constitutional rights," it nonetheless decided to "leav[e] the individual [Citizens] to bear their own costs" as the "lesser of these two unjust results."

As an initial matter, it is of little or no import that the County Board was not involved in enacting the Redistricting Act. The relevant facts are that the County Board *was charged with enforcing the Act* and that the Citizens *obtained full relief* against the County Board. Suits seeking injunctions against enforcement entities are the standard means by which laws are challenged on constitutional grounds. As the Supreme Court has noted, "[f]ee awards *against enforcement officials* are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction." *Supreme Court of Va. v. Consumers Union, Inc.*, 446 U.S. 719, 739 (1980) (emphasis added). The purpose of fee shifting is *not to punish* those responsible for promulgating unconstitutional laws, but rather to "enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Kay v. Ehrler*, 499 U.S. 432, 436 (1991);

10

*see also Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 417 (5th Cir. 2007) ("That a defendant does not promulgate a policy does not eliminate the costs the plaintiff had to bear in securing his rights, hence even defendants lacking culpability and acting in good faith should pay attorneys' fees"); *Hastert,* 28 F.3d at 1439, 1444 (holding that the Illinois State Board of Election Commissioners could be liable for attorney's fees in a redistricting case, notwithstanding the fact that the State Board was "truly a nominal defendant" that had "no interest in the eventual outcome except that there *be* an outcome which it [could] implement"). Enabling civil rights plaintiffs to have access to courts to enjoin enforcement of unconstitutional laws furthers the national policy of facilitating the redress of civil rights grievances — irrespective of whether the party enjoined was responsible for enacting the law at issue. *See Zipes*, 491 U.S. at 759.

In addition, the County Board's refusal to defend the Redistricting Act in court should have been of little moment on the issue of whether to award fees to the Citizens. *See Hastert*, 28 F.3d at 1444 n.16 (noting that, for purposes of attorney's fees, it was "of no consequence" that the defendant "played no active role in the proceedings and agreed to enforce whatever plan the district court adopted"). It is true that the County Board's refusal to defend the law streamlined the litigation and thereby *reduced* the fees incurred. But the Board's actions did "not eliminate the costs [that] the plaintiff[s] had to bear in securing [their] rights," *Pruett*, 499 F.3d at 417, which, given that the clear goal of § 1988 and § 10310(e) is to eliminate or reduce such costs in order to provide "effective access to the judicial process," *see City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986), means that the Citizens should be awarded the fees that they incurred in vindicating their

11

civil rights. Thus, while the County Board's conduct during litigation may have *limited* its fee liability, it did not immunize the Board from fee liability.

Moreover, contrary to the County Board's argument, there is no injustice in requiring a *county* entity to pay fees in a lawsuit challenging the constitutionality of a *state* law. The First Circuit, in affirming a § 1988 fee award against a city government for a lawsuit successfully challenging the constitutionality of a state law, explained this well:

> The facts that the city did not itself enact the law at issue and that some other entity may be more 'culpable' or 'causally responsible' than the city do not, in our view, make it 'unjust' as a matter of law to assess these costs. *Indeed, civil rights action costs (including attorney's fees) are often assessed against defendants who enforce the laws instead of those who enact them. The legislature is rarely sued.* School districts and counties have paid costs when they sought to enforce state statutes. We see nothing in the city/state relationship that would warrant carving out a special legal rule excepting cities from cost liability when they seek to enforce state statutes. Cities are legal instruments of the state. In any event, the practical difficulties that would accompany any requirement that courts trace the cost dollar back to the most appropriate 'tax pot' suggest that Congress had no such legal rule in mind. The state can more easily provide for appropriate shifting of financial burdens when it enacts indemnification statutes.

*Venuti v. Riordan*, 702 F.2d 6, 8 (1st Cir. 1983) (Breyer, J.) (emphasis added) (citations omitted); *see also Pruett*, 499 F.3d at 416–17 (concluding that no "special circumstances" existed where the defendant — a county entity in a lawsuit challenging the constitutionality of a state law — was "not a policy making body" but rather "merely enforce[d] the laws and policies of the state"). At bottom, because the County Board was the "department of the State" charged with enforcement of the Redistricting Act, *see Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009), the County Board's

12

concerns are ultimately about how North Carolina has chosen to structure its enforcement apparatus. Those concerns, however, cannot justify denying fees to prevailing civil rights plaintiffs. And to the extent the County Board suggests that the burden on county taxpayers supports denying fees, we have already expressly recognized that such a burden is "an improper ground for denying or reducing an attorney's fee to the prevailing party under 42 U.S.C. § 1988." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994).

Finally, the Citizens' choice to sue only the County Board and not any unnecessary defendants cannot support denying fees. The County Board, as the instrumentality charged with the enforcement of the Redistricting Act, was the only necessary defendant, *see Wright*, 787 F.3d at 262–63, and the Citizens prevailed against it, obtaining full relief. The County Board therefore was the only entity "legally responsible for relief on the merits." *Zipes*, 491 U.S. at 763 (citation omitted).

Seeking to avoid an award of fees against it, the County Board points to our decision in *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976). But that decision cannot sustain the weight that the County Board seeks to place on it. In *Chastang*, the plaintiffs filed suit under Title VII, alleging that their employer's retirement plan discriminated on the basis of sex and naming as defendants their employer, the committee administering the plan, and the plan's corporate trustee. After the plaintiffs prevailed, the district court declined to award attorney's fees, and we affirmed. Recognizing that "good faith alone would not insulate [the defendants] from making [the] plaintiffs whole," we concluded that circumstances in that case presented

13

"more."  *Chastang*, 541 F.2d at 1045.  Of key importance, we noted that "[s]hould attorneys' fees be awarded . . . the net effect would be to penalize innocent participants in the plan," who, "[b]ecause the plan was amended to eliminate its illegally discriminatory aspects *before plaintiffs' suits were filed*," could not "be said to have derived any benefit, direct or indirect, from the litigation."  *Id.* (emphasis added); *see also id.* (noting that the company "redressed its unintentional violation" of Title VII and that "from the chronology of events [it could not be] infer[red] that plaintiffs' law suits were a contributing factor").  The circumstances in *Chastang* are thus materially different from those in this case, where the Citizens obtained a permanent injunction barring enforcement of a redistricting law found to be unconstitutional.

At bottom, we conclude that the district court abused its narrowly circumscribed discretion in holding that "special circumstances" existed in this case.  We therefore reverse the district court's order and remand for a determination of a reasonable fee award.  In making that determination, however, the Citizens will not be entitled to recover fees attributable to the intervenors' involvement.  *See Brat v. Personhuballah*, 883 F.3d 475, 484–85 (4th Cir. 2018).

REVERSED AND REMANDED

14

RICHARDSON, Circuit Judge, dissenting:

Congress authorized district courts to award attorney's fees to prevailing civil rights plaintiffs under 42 U.S.C. § 1988. But in doing so, Congress did not mandate fee awards in every case. Rather, Section 1988(b) provides that "the court, *in its discretion*, *may* allow the prevailing party … a reasonable attorney's fee as part of the costs." (emphasis added). This unambiguous delegation of authority requires us to give the district judge—the person most closely attuned to the facts—at least a modicum of discretion to decide whether to award fees.

Here, the district court scrutinized the conduct of the parties and determined that awarding attorney's fees would be unjust. My good colleagues disagree. But because the judge thoughtfully exercised the discretion granted to her, I respectfully dissent.

One could be excused for thinking that the statutory language—"the court, in its discretion, may"—bestows broad discretion on the district court to decide whether to award attorney's fees. Such a conclusion would be even more understandable after contrasting this text with that of other fee-shifting provisions that limit a judge's discretion. *See, e.g.*, 22 U.S.C. § 9007(b)(3) (the court "*shall order* the respondent to pay necessary expenses … *unless the respondent establishes that such order would be clearly inappropriate*" (emphasis added)). Despite the statute's text, courts have narrowly construed district courts' discretion under Section 1988(b) to further a "policy of facilitating access to judicial process for the redress of civil rights grievances." Majority Op. at 7. But neither the Supreme Court nor this Court has stripped the district courts of all discretion. Indeed, courts have repeatedly acknowledged that some discretion remains

15

to deny fees to prevailing parties based on "special circumstances." *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (noting that a plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust" (quoting legislative history)).[1]

In determining whether "special circumstances" warranted denying attorney's fees, the court below considered the actions of both sides, looking to the relevant behavior of the defendant as well as the plaintiffs. If "special circumstances" are to mean anything, they must include the conduct of the parties involved in the litigation. The district court was best positioned to evaluate that conduct, which it had witnessed firsthand. We should not quickly discard her insightful analysis.

First, the district judge examined the defendant's conduct leading up to and during the litigation. And here the County Board of Elections neither enacted nor took any positions to defend the offending law. What is more, the County Board actively cooperated with plaintiffs to simplify their case by stipulating to various facts. In making those decisions, the County Board reasoned that, as a ministerial entity, "taking a position on the constitutional issues raised would be inconsistent with its duty to administer elections in an impartial and nonpartisan manner." *City of Greensboro v. Guilford Cty. Bd. of Elections*, 248 F. Supp. 3d 692, 697 (M.D.N.C. 2017).

---

[1] Plaintiffs stress that as a factual matter judges rarely deny attorney's fees in these cases. But rarity does nothing to show whether *this judge* abused her discretion in finding *these special circumstances* supported denying fees.

16

As the district court acknowledged, a defendant's good faith is not enough, standing alone, to warrant denying fees. But this does not make good faith irrelevant when combined with something "more." *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir. 1976). To the contrary, we have held that a defendant's good faith is a "virtual prerequisite" to a denial of fees. *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994).

More broadly, our precedent makes clear that the defendant's conduct can be relevant to deciding whether to award fees. *See Chastang*, 541 F.2d at 1045 (holding the denial of fees justified in part by the blamelessness and behavior of the defendant); *see also Consumers Union of U.S., Inc. v. Virginia State Bar*, 688 F.2d 218, 222 (4th Cir. 1982) (holding the fee award justified in part because the defendant helped enact the unconstitutional rule and sought to repeal it only after the plaintiffs sued). A district court may thus consider that a defendant, with no choice but to carry out the challenged action, affirmatively chose not to defend the law and instead assisted the plaintiffs.[2]

---

[2] The Majority attempts to distinguish *Chastang* based on the timing of the defendant company's amendment of the retirement plan at issue. Majority Op. at 14. But our holding there did not turn on that one fact. While *Chastang* certainly acknowledged the relevance of the timing of the plan's amendment to comply with the law going forward, the amendment did nothing to eliminate the need for the lawsuit to recover past damages. Along with the defendant's good faith and prompt amendment to the unconstitutional plan, we found something "more" that justified denying fees. We noted that the defendant company (1) did not violate the law when it first established the retirement plan, (2) had no "unrestricted right" to amend the plan, (3) acted "with reasonable dispatch as soon as a murky area of the law was clarified," (4) "unintentional[ly]" violated the law, (5) "had no pecuniary interest in the fund," meaning it "had no economic incentive" to violate the law, and (6) "more importantly, it had no right unilaterally to alter the schedule of benefits for participants in the plan." *Chastang*, (Continued)

17

Along with considering the defendant's actions, the district court also considered the plaintiffs' litigation conduct. The plaintiffs initially sued only the County Board. Then they actively resisted intervenors' attempts to join *any* party with policymaking responsibility for the Act (*e.g.*, a member of the State Board of Elections). Now, the plaintiffs' attorneys seek to excuse those choices based on flimsy reasoning.[3] Nothing precluded them from suing responsible state actors. Yet they focused on a defendant who would not defend the suit.

That strategic focus on this defendant made their case easier to win. But it also meant that the County Board—a local government entity with no meaningful responsibility for the practices at issue, and whose budget is far smaller than the state's— would be left holding the bag when it came time to pay attorney's fees. Since district judges are in the best position to identify stratagem, we should respect this district

---

541 F.2d at 1045. Similarly, we noted that (7) the committee administering the plan should not pay fees because "it did not originate the discrimination which subsequently became illegal," but merely "participated in a passive act of discrimination." *Id.* Finally, we noted that (8) awarding fees would only "penalize innocent participants in the plan." *Id.*

[3] The attorneys for the plaintiffs claim that they "potentially risked sanctions by willfully disregarding this Court's very recent ruling [in *Wright v. North Carolina*] that naming only the County Board (and not a state defendant) was the appropriate course." Appellants' Brief at 29. This overstates our holding. Nowhere in our opinion did we state that plaintiffs can *only* sue an elections board. Instead, we merely found that plaintiffs *must* sue the county board of elections and that suing individual legislators "would be futile" since such individuals lack enforcement authority. *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015). We offered no decision on the efficacy of suing other state officials who possess some authority.

judge's determination that this conduct contributed to the special circumstances warranting the denial of fees.

In exercising its discretion not to award attorney's fees, the district court recognized the competing concerns and considered the actions of both the County Board and the plaintiffs.  Having done so, the court decided that under "the peculiar circumstances of this case, it would be unjust to require the County Board to pay the individual plaintiffs' attorney's fees."  *City of Greensboro v. Guilford Cty. Bd. of Elections*, No. 1:15-CV-559, 2018 WL 276688, at *1 (M.D.N.C. Jan. 3, 2018).  This was a reasonable exercise of its discretion.  To conclude otherwise reads that discretion out of Section 1988, allowing the statute's purpose to swallow its text.  *Cf. Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text.").

When a statute grants a district court discretion to make hard decisions, it is inevitable that we will face cases in which we disagree with the outcome but still must affirm.  This district court, acting in line with the text of this statute as well as precedent, concluded that awarding fees would work a greater injustice than not awarding fees under these special circumstances.  Though I may not have reached the same conclusion, I must still respect the district judge's finding.  For that reason, I respectfully dissent.